724

CORPAK, INC. y ART PRINTING, INC., demandantes y recurrentes, *v.* RAMALLO BROTHERS PRINTING, INC., demandados y recurridos.

*Número:* RE-87-586          *Resuelto:* 9 de marzo de 1990

*Gabriel I. Peñagarícano*, abogado de los recurrentes; *Rafael Pérez-Bachs*, de *McConnell, Valdés, Kelley, Sifre, Griggs & Ruiz-Suria*, abogado de la recurrida.

EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ emitió la opinión del Tribunal.

Al dictar sentencia sumaria declarando con lugar una solicitud que a esos efectos había radicado la parte demandada recurrida, Ramallo Brothers Printing, Inc. (Ramallo) —rela-

tiva la misma a una demanda de *injunction* preliminar, *injunction* permanente y daños y perjuicios que contra dicha parte demandada había radicado la demandante recurrente Corpak, Inc. y Art Printing, Inc. (Corpak)—(¹) el Tribunal Superior de Puerto Rico, Sala de San Juan,(²) en adición a desestimar la demanda radicada, condenó a Corpak al pago de las costas y de los honorarios *reales* de abogado en que Ramallo había incurrido al defenderse de la referida acción. A esos efectos, el tribunal de instancia le ordenó a Ramallo que incluyera, como parte de su memorando de costas, una declaración jurada en que detallara los honorarios de abogado *efectivamente* pagados a su representación legal.

En cumplimiento de dicha orden, Ramallo le informó bajo juramento al foro de instancia que le había pagado a su representante legal —el bufete de abogados McConnell, Valdés, Kelley, Sifre, Griggs & Ruiz-Suria— la suma total de $42,909.50 por concepto de honorarios de abogado en relación con el referido pleito. Como evidencia de ello, se acompañaron facturas del mencionado bufete de abogados en que se detallaban las horas alegadamente trabajadas en dicho caso por distintos abogados pertenecientes al mismo. El tribunal de instancia, aparentemente considerando excesiva la suma de dinero reclamada por concepto de honorarios de abogado, redujo la misma a la cantidad de $26,000. Dicho foro no explicó la forma y manera, o razonamiento, que utilizó para llegar a la mencionada cifra de dinero.

Inconforme, Corpak acudió ante este Tribunal en revisión de la actuación judicial antes descrita. Cuestionó, en síntesis, no sólo la determinación del foro de instancia sobre la

---

(¹) En dicha demanda, en síntesis, se alegó que Ramallo —desde hacía varios años y en forma sistemática— se había dedicado a "sonsacar" los empleados claves de Corpak con el propósito expreso de "apropriarse ilegalmente" de los secretos comerciales e información confidencial de Corpak. Se reclamó la suma de $500,000 por los daños alegadamente sufridos por Corpak.

(²) Hon. Arnaldo López Rodríguez, Juez Superior.

procedencia jurídica de la solicitud de sentencia sumaria sino la imposición —y la cuantía— de honorarios de abogado, por temeridad, en el caso de epígrafe.(³) Le concedimos término a Ramallo para que mostrara causa por la cual no debíamos expedir el auto de revisión radicado y dictar sentencia modificatoria de la emitida por el tribunal de instancia "a los únicos efectos de reducir la suma de $26,000.00 concedida a dicha parte, por concepto de honorarios de abogado, a la cantidad de $5,000.00".

La parte demandada recurrida ha comparecido en cumplimiento de nuestra resolución. En su comparecencia, Ramallo nos solicita que incorporemos a nuestro ordenamiento la fórmula o método imperante en la jurisdicción federal respecto al cómputo de los honorarios de abogado a ser concedidos en aquellas áreas de la litigación en que estatutariamente se provee para la concesión de dichos honorarios en la referida jurisdicción. Resolvemos.

I

En *Alyeska Pipeline Co. v. Wilderness Society*, 421 U.S. 240 (1975), el Tribunal Supremo de los Estados Unidos resolvió que, *como regla general y salvo disposición estatutaria en contrario*, cada parte en un litigio será responsable de los honorarios de abogado en que incurra en la tramitación del

---

(³) En el recurso de revisión radicado, Corpak le imputa al tribunal de instancia haber errado:

"1. ... al dictar sentencia sumaria desestimando la demanda por hallar que las recurrentes carecían de prueba para sostener sus causas de acción[;]

"2. ... al aprobar como costas los gastos ordinarios de oficina de abogado e incluir como costas una porción de los honorarios de abogado facturados a la recurrida[, y]

"3. ... al determinar que los recurrentes habían incurrido en temeridad e imponerles el pago de honorarios de abogado." Solicitud de revisión de 23 de noviembre de 1987, pág. 4.

mismo. Dicha norma ha sido denominada como el *American Rule*.(4)

La decisión emitida en el citado caso de *Alyeska Pipeline Co. v. Wilderness Society*, tuvo el efecto de causar la aprobación por el Congreso de los Estados Unidos de una serie de estatutos proveyendo para el recobro de honorarios de abogado por la parte victoriosa en un litigio en la jurisdicción federal. Actualmente existen más de cien estatutos —conocidos como *Federal Fee-Shifting Statutes*— en la jurisdicción federal que proveen expresamente para la concesión de honorarios de abogado.(5) En la amplia mayoría de los *Federal Fee-Shifting Statutes* se requirió que la partida concedida por concepto de honorarios de abogado fuera una "razonable". A manera de ejemplo, véanse: *The Civil Rights Attorney's Fees Awards Act of 1976*, 42 U.S.C. sec. 1988; *Privacy Act of 1974*, 5 U.S.C. sec. 552a(g)(4)(B); *Truth in Lending Act*, 15 U.S.C. sec. 1640(a)(3); *Consumer Credit Protection Act*, 15 U.S.C. sec. 1692K(a)(3); *Labor-Management Reporting and Disclosure Act*, 29 U.S.C. sec. 431(c); *Fair Labor Standards Act of 1938*, 29 U.S.C. sec. 216b. Ello, naturalmente, tuvo el efecto práctico de "delegar" en la Rama Judicial la implantación de la forma y manera, o el método, en que se computaría la cuantía de honorarios a ser concedida a la parte victoriosa en un litigio en el foro federal. Los tribunales federales inmediatamente empezaron a elaborar diferentes métodos con el objetivo de poder determinar qué constituían "honorarios razonables". Véase 6 *Moore's Federal Practice* Sec. 5479[1] (2da ed. 1988).

---

(4) Para un recuento histórico sobre el desarrollo del *American Rule* véase J. Leubsdorf, *Toward a History of the American Rule on Attorney Fee Recovery*, 47 Law & Const. Probl. 9 (Winter 1984).

(5) Para una lista de la legislación aprobada a estos efectos, véase la opinión disidente emitida por el Juez Asociado del Tribunal Supremo de los Estados Unidos, Hon. William J. Brennan, en *Marek v. Chesny*, 473 U.S. 1, 44–51 (1985).

Así, por ejemplo, tenemos que el Tribunal Federal de Apelaciones para el *Tercer* Circuito, en *Lindy Bros. Bldrs., Inc. of Phila. v. American R. & S. San. Corp.*, 487 F.2d 161 (3er Cir. 1973), estableció el método concocido como *lodestar fee*. El mismo, *en síntesis*, consiste en dos partes o pasos. Primeramente se determina el número de horas que *razonablemente resultaron necesarias* para la tramitación del pleito. Determinado dicho número de horas, se *multiplica* el mismo por la *tarifa por hora* que el tribunal entiende *razonable*, ello conforme a tarifas en casos similares prevalecientes en la comunidad legal en particular.

Escasamente tres meses más tarde, el Tribunal Federal de Apelaciones para el *Quinto* Circuito optó por desarrollar un método de computar los honorarios de abogado a recobrarse un tanto más subjetivo que el del *lodestar fee*. En *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5to Cir. 1974), dicho tribunal resolvió que los honorarios de abogado a concederse tenían que ser "computados", caso a caso, a base de *doce factores o criterios* que en dicha decisión dicho foro enumeró.[6]

El conflicto creado por los distintos circuitos de apelaciones al crear y aplicar diferentes métodos para computar los honorarios "razonables" de abogado a concederse no tardó mucho tiempo en llegar al Tribunal Supremo federal. Éste adoptó lo que se ha denominado por los comentaristas como el "método híbrido" (*hybrid approach*), el cual no es

---

[6] Los doce factores esbozados en la opinión de *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717 (5to Cir. 1974), son: "(1) The time and labor required; (2) The novelty and difficulty of the questions; (3) The skill requisite to perform the legal service properly; (4) The preclusion of other employment by the attorney due to acceptance of the case; (5) The customary fee; (6) Whether the fee is fixed or contingent; (7) Time limitations imposed by the client or the circumstances; (8) The amount involved and the results obtained; (9) The experience, reputation and ability of the attorneys; (10) The "undesirability" of the case; (11) The nature and length of the professional relationship with the client; (12) Awards in similar cases."

otra cosa que una combinación o fusión de los métodos que habían sido adoptados por el Tercer y Quinto Circuito en los citados casos de *Lindy Bros. Bldrs., Inc. of Phila. v. American R. & S. San. Corp.*, y *Johnson v. Georgia Highway Express, Inc.* El mismo igualmente consiste de dos pasos. Al igual que en el método *lodestar*, el tribunal tiene que determinar el número de horas que *razonablemente* resultaron necesarias en la tramitación del litigio,[7] y luego multiplicar ese número total de horas por la tarifa por hora prevaleciente en la comunidad legal.[8] La variante, o adición, del "método híbrido" consiste, en síntesis, en que esa tarifa por hora (*market hourly rate*), o el producto de la multiplicación del número de horas por la tarifa podrá aumentarse, o disminuirse, por el juez a base de los factores enumerados en el citado caso de *Johnson v. Georgia Highway Express, Inc.* Véanse: *Hensley v. Eckerhart*, 461 U.S. 424 (1982); *Blum v. Stenson*, 465 U.S. 886 (1984); *Riverside v. Rivera*, 477 U.S. 561 (1986).

---

(7) La determinación sobre el "número de horas que razonablemente resultaron necesarias para la tramitación del pleito" requiere un *examen minucioso* de la factura legal reclamada. El representante legal de la parte victoriosa no puede pretender cobrar del adversario lo que no procedía cobrarle a su cliente. Como certeramente ha expresado un estudioso de la materia:

"A court is not bound by the claim asserted by the lawyer. Many courts have properly recognized their obligation to scrutinize the hours submitted by the attorney to assure that the time expended was not unnecessarily duplicative, or indeed, not expended at all. As one court noted that '[t]he Court may discount the number of hours counsel has submitted in its logs, if the Court determines, based upon the facts, circumstances and legal issues in the case, that the hours expended were unnecessary, unrelated or involved duplication of activity'". S.R. Berger, *Court Awarded Attorneys' Fees: What is "Reasonable"?*, 126 U. Pa. L. Rev. 281, 319 (1977).

(8) En cuanto a la tarifa por hora, debe mantenerse presente que ésta necesariamente no tiene que ser la acordada entre la parte y su representante legal. Se requiere una determinación por parte del tribunal sobre cuál es la tarifa *prevaleciente* en la comunidad por trabajo similar. Al computar la misma se podrá tomar en consideración el entrenamiento, experiencia y la particular destreza del abogado. Berger, ante, pág. 321.

## II

Este "método híbrido" de calcular los honorarios de abogado a concederse a la parte que resulta victoriosa en un litigio —vigente hoy día en la jurisdicción federal en aquellas áreas de la litigación en que el Congreso estatutariamente así lo ha dispuesto— es precisamente el método que la parte demandada recurrida formalmente nos solicita que adoptemos en nuestra jurisdicción. Antes de entrar en los méritos de dicha solicitud, y con el propósito de ubicar la misma en su justa perspectiva, consideramos apropiado realizar un breve examen de las consecuencias reales que en la práctica de la profesión a nivel federal ha tenido la adopción del "método híbrido" de calcular honorarios de abogado.

Desde el preciso momento en que el Tribunal Supremo de los Estados Unidos decidió adoptar el referido método, dicho Foro percibió el peligro de que la determinación y adjudicación de los honorarios bajo el mismo diera origen a una segunda batalla legal entre las partes, igual o más complicada que el pleito original. A esos efectos, dicho Tribunal, en el citado caso de *Hensley v. Eckerhart*, expresó que "una solicitud de honorarios de abogado no debe resultar en una segunda causa mayor de litigación". (Traducción nuestra.)(9)

Desafortunadamente para el sistema de justicia federal, al cabo de escasamente siete años de haberse emitido dicha advertencia, los tribunales federales han podido percatarse del hecho de que la misma no ha sido acatada por los litigantes y que los propios tribunales no han podido efectivamente controlar la situación. A manera de ejemplo, véanse: *Save Our Cumberland Mountains, Inc. v. Hodel*, 857 F.2d 1516 (D.C. Cir. 1988); *Jean v. Nelson*, 863 F.2d 759 (11mo Cir. 1988); *Moore v. City of Des Moines, Iowa*, 766 F.2d 343 (8vo Cir. 1985); *Aubin v. Fudala*, 821 F.2d 45 (1er Cir. 1987).

---

(9) "A request for attorneys' fees should not result in a second mayor litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1982).

Al respecto, resultan particularmente ilustrativas las palabras expresadas por el Octavo Circuito en el antes citado caso de *Moore v. City of Des Moines, Iowa* —de las cuales se hizo eco el Primer Circuito en *Aubin v. Fudala*, ante— a los efectos de que:

> Our concern centers on the large number of cases on our docket alleging an abuse of the district court's discretion which are based simply on the amount of an attorne[y's] fee award. Such appeals often lack substance and hinder the prompt disposition of more meritorious appeals. The dockets of all federal courts are overcrowded. We suggest to the bar and to individual counsel that as officers of the court, lawyers have a responsibility in limiting litigation over attorneys' fees. Most fee cases can be processed through amicable negotiation and agreement; the district courts should not become the inevitable haven for adversary proceedings concerning attorneys' fees.

En la crítica al "método híbrido" de computar honorarios, los comentaristas no se han quedado atrás. Resulta factible sintetizar las críticas al desarrollo de la doctrina federal sobre esta materia a través del certero comentario a los efectos de que "las cortes [federales] han pasado más de una década intentando resolver el problema de cómo determinar qué constituyen 'honorarios razonables'". (Traducción nuestra.) J. Kravcik, *Attorneys' Fees*, 57 Geo. Wash. L. Rev. 1122, 1144 (1989). Véanse, en adición: *The Supreme Court 1986 Term*, 101 Harv. L. Rev. 119, 299 (1987); Nota, *A Public Goods Approach to Calculating Reasonable Fees Under Attorney Fee Shifting Statutes*, 1989 Duke L.J. 438, 439, 472 (1989); Nota, *Determining the Reasonableness of Attorneys' Fees–The Discoverability of Billing Records*, 64 B.U.L. Rev. 241 (1984); J. Coffee, *Understanding the Plaintiff's Attorney: The Implicating of Economics Theory for Private Enforcement of Law Through Class and Derivative Actions*, 86 Colum. L. Rev. 669, 674–675 (1986).

Para terminar esta breve incursión en los problemas, prácticos y reales, que la adopción y aplicación del llamado "método híbrido" de computar honorarios de abogado ha causado en la esfera federal, consideramos procedente señalar —como dato curioso e irónico— el hecho de que en múltiples ocasiones la cantidad de dinero concedida por concepto de honorarios de abogado ha *sobrepasado sustancialmente* la suma de dinero otorgada a la parte por concepto de su reclamación original en el pleito radicado.([10]) Ese dato, por sí solo, no sólo levanta serias dudas sobre la corrección y deseabilidad de dicho método, sino que plantea una delicada interrogante de naturaleza ética.

## III

■ ¿Procede la adopción en nuestra jurisdicción del antes descrito "método híbrido" de computar honorarios de abogado prevaleciente en la jurisdicción federal? Resolvemos que no; veamos por qué.

■ Aparte de que, como hemos podido notar, la aplicación de dicho método ha causado unos serios trastornos en la administración de la justicia en la esfera federal, constituyendo el mismo en la actualidad un verdadero problema en dicha jurisdicción, tenemos que tanto el *lenguaje* como el *propósito* de las disposiciones pertinentes de nuestro ordenamiento jurídico que autorizan la concesión de honorarios de abogado difieren sustancialmente de los estatutos federales —los llamados *Federal Fee-Shifting Statutes*— en vir-

---

([10]) *Riverside v. Rivera*, 477 U.S. 561 (1986) ($33,350 sentencia y $245,456.25 honorarios); *Cunningham v. City of Mckeesport*, 753 F.2d 262 (3er Cir. 1985) ($17,000 sentencia y $35,887.50 por concepto de honorarios); *Copeland v. Marshall*, 641 F.2d 880 (D.C. Cir. 1980) ($33,000 sentencia y $160,000 honorarios); *Paschall v. Kansas City Star Co.*, 695 F.2d 322 (8vo Cir. 1982), en 727 F.2d 692 (8vo Cir. 1984), *cert.* denegado, 469 U.S. 872 (1984) ("cero" indemnización, $1.2 millones en honorarios).

tud de los cuales se ha desarrollado la citada metodología federal.(11)

■ Conforme hemos visto, en la jurisdicción federal procede *siempre* la concesión de una "suma razonable" por concepto de honorarios de abogado a la parte que resulta victoriosa en un litigio, siempre y cuando el estatuto bajo el cual se litigó la acción así lo autorice. Ello es así por cuanto los llamados *Federal Fee-Shifting Statutes* tienen como propósito principal *recompensar* a la parte victoriosa por los gastos en que razonablemente incurrió durante la tramitación del proceso judicial *independientemente* de la "conducta" asumida por el litigante perdidoso. El Congreso de los Estados Unidos entendió que, de este modo, fomentaba que los ciudadanos acudieran a los tribunales y litigaran sin temor en reclamo, o defensa, de los derechos que les conceden los estatutos federales. Dicha intención congresional se desprende diáfanamente del historial legislativo de varios de los llamados *Federal Fee-Shifting Statutes*. Véanse, a manera de ejemplo: *Civil Rights Attorney's Fees Award of 1976*, S. Rep. No. 1011, 94th Cong., 2d Sess. 6 (1976), reimpreso en 1976 U.S. Code Cong. & Admin. News 5908, 5913; *Clear Air Act Amendments of 1977*, H.R. Rep. No. 294, 95th Cong., 1st Sess. 337 (1977), reimpreso en 1977 U.S. Code Cong. & Admin. News 1077, 1416; *Freedom of Information Act*, H.R. Rep. No. 876, 93rd. Cong., 2d Sess. (1974), reimpreso en 1974 U.S. Code Cong. & Admin. News 6267, 6272. Así mismo los tribunales reiteradamente lo han interpretado. *Pennsylvania v. Dela. Valle Cit. Council*, 478 U.S. 546, 565 (1986); *Hensley v. Eckerhart*, ante, pág. 429; *Duncan v. Poythress*, 777 F.2d 1508, 1513 (11mo Cir. 1985), *cert.* dene-

---

(11) Desde *Valle v. Amer. Inter. Ins. Co.*, 108 D.P.R. 692, 696–697 (1979), hemos enfatizado la prudencia y precaución que debe regir la adopción en nuestro ordenamiento de doctrinas desarrolladas en el derecho común que puedan resultar incompatibles con las particularidades de nuestro sistema de justicia.

gado, 475 U.S. 1129 (1986); *Lawrence v. Staats*, 586 F. Supp. 1375, 1379 (D.C. D.C. 1984); *Rybicki v. State Bd. of Elections of State of Ill.*, 584 F. Supp. 849, 859 (N.D. Ill. 1984); *Culebras Enterprises Corp. v. Rivera Ríos*, 660 F. Supp. 540, 546 (D.P.R. 1987), revocado en 846 F.2d 94 (1er Cir. 1988); *Metropolitan Wash. Coal. Etc. v. Dist. of Col.*, 639 F.2d 802, 804 (D.C. Cir. 1981).

En nuestra jurisdicción, por el contrario —y en virtud de las disposiciones específicas a esos efectos de la Regla 44.1(d) de Procedimiento Civil de 1979, según enmendada—(12) la concesión o no de honorarios de abogado a la parte que prevaleció en un litigio como regla general *depende exclusivamente* de la determinación que haga el magistrado que presidió el proceso *respecto a si la parte perdidosa, o su abogado, actuaron o no en "forma temeraria o frívola"*. Esto es, en nuestro sistema de justicia *no procede* la imposición o concesión de honorarios en *todos* los casos; *únicamente*, repetimos, en aquellos casos en que el tribunal entiende que la parte perdidosa, o su abogado, actuaron con temeridad o frivolidad.(13)

---

(12) 32 L.P.R.A. Ap. II. La citada disposición legal *actualmente* establece:
"(d) *Honorarios de abogado*. En caso que cualquier *parte o su abogado* haya procedido *con temeridad o frivolidad*, el tribunal deberá imponerle en su sentencia *al responsable*, el pago de una suma por concepto de honorarios de abogado *que el tribunal entienda correspondan a tal conducta*." (Énfasis suplido.)

Antes de la enmienda que sufriera en 30 de diciembre de 1986, la citada Regla 44.1(d) de Procedimiento Civil, *disponía*:

"(d) *Honorarios de abogado*. En caso que *cualquier parte haya procedido con temeridad*, el tribunal deberá imponerle en su sentencia el pago de una suma por concepto de honorarios de abogado". (Énfasis suplido.)

(13) Procede que se señale que en nuestra jurisdicción, como excepción a la referida regla general, existen estatutos —los cuales regulan materias especiales— que contienen lenguaje similar al de los *Federal Fee-Shifting Statutes* en lo relativo a la concesión de honorarios. A esos efectos, entre otros, véanse: Ley de Reclamaciones Laborales, 32 L.P.R.A. secs. 3115 y 3122; Ley Antimonopolística, 10 L.P.R.A. sec. 268.

█ De manera que —a diferencia de la jurisdicción federal en que el objetivo primordial que se persigue en la imposición de honorarios de abogado lo es el de compensar a la parte victoriosa por los gastos necesarios en que, por concepto de honorarios, incurrió al litigar el caso— en nuestra jurisdicción el *propósito fundamental* de la citada Regla 44.1(d) de Procedimiento Civil, "fuente" estatutaria para la concesión de honorarios de abogado, es el de *"penalizar o sancionar"* a aquellas partes que por su temeridad, obstinación, contumacia e insistencia en una actitud frívola o desprovista de fundamento, obligan a otra parte a asumir y sufrir las molestias, gastos, trabajo e inconveniencias de un litigio innecesario. *Colondres Vélez v. Bayrón Vélez*, 114 D.P.R. 833, 842 (1983); *Fernández v. San Juan Cement Co., Inc.*, 118 D.P.R. 713, 718 (1987); *Ramírez v. Club Cala de Palmas*, 123 D.P.R. 339 (1989). No hay duda de que al "penalizar" al "temerario o frívolo" mediante la concesión de honorarios de abogado a la parte victoriosa en el pleito, igualmente estamos compensando o indemnizando parcialmente a esta última por los gastos en que incurrió por concepto de honorarios de abogado. Si bien ello es así, repetimos, el objetivo de compensación no es el propósito fundamental de la citada Regla 44.1(d) de Procedimiento Civil. Si así lo fuera, procedería la imposición de honorarios, al igual que en el foro federal, en todos los casos, y no meramente en aquellas situaciones de temeridad o frivolidad.(14)

---

(14) Desde *Bonilla v. Chardón*, 118 D.P.R. 599 (1987), reconocimos la diferencia entre nuestra Regla 44.1(d) de Procedimiento Civil, ante, y la Sec. 1988 de la Ley de Derechos Civiles, 42 U.S.C. sec. 1988, sección de donde prácticamente ha dimanado toda la jurisprudencia federal relativa a la fórmula de imponer honorarios. A tales efectos señalamos en *Bonilla v. Chardón*, ante, pág. 617:

"Nuestro ordenamiento sanciona la temeridad de un litigante perdidoso mediante el pago de honorarios de abogado . . . . No obstante, la Sección 1988 opera independientemente de la temeridad en que hayan incurrido las partes. Su propósito no es sancionar, sino proveer un remedio completo para fomentar la vindicación de derechos civiles . . . ."

Por otro lado, nada en el lenguaje de la citada Regla 44.1(d) de Procedimiento Civil permite la inferencia razonable de que la suma de dinero a imponerse a la parte perdidosa que ha actuado con temeridad o frivolidad tiene que necesariamente coincidir con los honorarios efectivamente pagados por la parte victoriosa a su representante legal. *Asociación de Condóminos v. Trelles Reyes*, 120 D.P.R. 571 (1988). *Todo lo contrario*. Hecha la determinación por el tribunal de instancia de que la parte perdidosa actuó con temeridad o frivolidad, *lo que la citada Regla 44.1(d) de Procedimiento Civil específicamente le exige al referido foro es que le imponga a dicha parte, como sanción, una suma de dinero por concepto de honorarios que corresponda a esa conducta temeraria o frívola observada por ella; esto es, al grado, o intensidad, de tal conducta.*

En consecuencia —y no obstante el hecho de que al cuantificar esos honorarios, los tribunales de instancia pueden tomar en consideración factores tales como la naturaleza del litigio, las cuestiones de derecho envueltas en el mismo, la cuantía en controversia, el tiempo invertido, los esfuerzos y actividad profesional que hayan tenido que desplegarse, y la habilidad y reputación de los abogados envueltos, *Serrano Vda. de Cartagena v. Lugo Ramírez*, 83 D.P.R. 300, 303 (1961); *Pan American v. Tribunal Superior*, 100 D.P.R. 413, 420 (1972); *Veve v. El Municipio de Fajardo*, 18 D.P.R. 764, 771 (1912)— deberá mantenerse presente *que el grado o intensidad de la conducta temeraria o frívola es el criterio o factor determinante y crítico* que tienen que tomar en consideración dichos tribunales al determinar la cuantía de los honorarios de abogado a imponerse a la parte perdidosa que ha actuado con temeridad o frivolidad, *Santos Bermúdez v. Texaco P.R., Inc.*, 123 D.P.R. 351 (1989); factor que será, a su vez, el que este Tribunal, de manera principal, tomará en cuenta al decidir si los tribunales de instancia han

ejercitado o no en forma correcta la discreción que a esos efectos le concede la citada Regla 44.1(d) de Procedimiento Civil.([15])

## IV

A la luz del marco doctrinal antes expuesto, analizamos la actuación del juez de instancia imponiéndole a la parte demandante recurrente el pago de la suma de $26,000 por concepto de honorarios de abogado.

■ Reiteradamente hemos resuelto que no procede la imposición de honorarios de abogado, por razón de temeridad, en un caso donde una parte acude al tribunal, o se defiende, en relación con una controversia de hechos que resulta de "primera impresión" en nuestra jurisdicción. *Rodríguez v. John Hancock Mutual Life*, 110 D.P.R. 1, 8 (1980). El hecho de que el punto resulte "nuevo", sin embargo, no constituye "carta blanca" para actuar en forma temeraria o frívola. Ante una situación de hechos innegables, o un estado de derecho claro, el hecho de que se trate de un asunto nunca antes considerado en nuestra jurisdicción no constituye excusa para una conducta o actuación obstinada, contumaz, temeraria o frívola. J.A. Cuevas Segarra, *Práctica Procesal Puertorriqueña: Procedimiento Civil*, San Juan, Pubs. J.T.S., 1985, Vol. II, pág. 245.

■ La determinación del foro de instancia en el presente caso a los efectos de que la parte demandante recurrente incurrió en temeridad al radicar la acción que origina el presente recurso es una, a nuestro juicio, correcta. Si bien es cierto que la situación de hechos en controversia era una

---

([15]) Dicha norma, naturalmente, no aplica en las situaciones —como las mencionadas en el escolio 13, ante— que están reguladas por leyes especiales. Sobre si en dichos casos el método a utilizarse en el concepto de los honorarios deberá ser, o no, el mismo utilizado en la jurisdicción federal, *quaere*.

que quizás podría catalogarse de "primera impresón",[16] no es menos cierto que —a la luz de la "prueba" con que contaba la parte demandante para sostener su caso, según ello quedó demostrado en la dilucidación de la moción de sentencia sumaria— dicha parte demandante debió haber realizado, antes de radicar la acción, que la misma tenía muy pocas probabilidades de prevalecer al amparo de las disposiciones pertinentes de nuestro ordenamiento jurídico. La procedencia y corrección jurídica de la sentencia sumaria emitida por el tribunal de instancia es evidencia fehaciente de ello. A nuestro juicio, en resumen, procede en el presente caso la condena en honorarios de abogado, por cuanto el pleito radicado era uno que razonablemente "se pudo evitar . . .". *Fernández v. San Juan Cement Co., Inc.*, ante.

En lo que respecta a la *cuantía* de los honorarios de abogado concedida, sin embargo, no podemos validar la actuación del tribunal de instancia. En relación a dicho tema, como es sabido, reiteradamente hemos sostenido que la partida de honorarios concedida no se variará en apelación, salvo que la misma resulte excesiva, exigua o constituya un abuso de discreción. *Ramírez v. Club Cala de Palmas*, ante; *Boyd v. Tribunal Superior*, 101 D.P.R. 651 (1973); *Serrano Vda. de Cartagena v. Lugo Ramírez*, ante; *Bauzá v. Colón Medina*, 38 D.P.R. 413 (1928); *Preston v. Vázquez*, 31 D.P.R. 889 (1923); *San Miguel Fertil. Corp. v. P.R. Drydock*, 94 D.P.R. 424, 442 (1967).

---

[16] La alegada conducta del demandado Ramallo en que se basa la acción radicada, conforme las alegaciones de la demanda radicada, consistió en:

". . . [I]nducir a personal clave de las empresas demandantes a dejar sus colocaciones con las demandantes e irse a trabajar con la demandada. El propósito expreso de la conducta maliciosamente nocible de la demandada es apropiarse ilegalmente de los secretos comerciales e información confidencial de las demandantes con la finalidad de interferir torticera, maliciosa e injustificadamente con el negocio de las demandantes, que son las mayores y primordiales competidoras de la demandada." *Exhibit* I, pág. 12.

Acorde con los hechos particulares del presente caso y con los factores reseñados en la parte III de la opinión —grado de la temeridad o frivolidad, naturaleza del litigio, cuestiones de derecho envueltas, cuantía, tiempo invertido, esfuerzo y actividad profesional desplegada, habilidad y reputación de los abogados, cuantía en controversia— indudablemente nos encontramos frente a una partida de honorarios excesiva, por lo que procede su reducción. *Rosario Crespo v. A.F.F.*, 94 D.P.R. 834, 850 (1967); *Berríos v. International Gen. Electric*, 88 D.P.R. 109, 121 (1963); *Ríos Pérez v. A.F.F.*, 93 D.P.R. 640, 646 (1966). La cuantía fijada ciertamente no corresponde al grado de temeridad desplegado por la parte demandante recurrente y, evidentemente, dicha partida no guarda proporción con la relativa brevedad de los procedimientos judiciales llevados a cabo en el caso, el cual se dilucidó mediante el mecanismo procesal de la sentencia sumaria y no en los méritos. Lo anteriormente expuesto nos lleva a concluir que dicha partida debe ser reducida a la suma de $5,000, la cual entendemos apropiada y razonable imponer *como sanción* que corresponde a la "temeridad o frivolidad" en que incurrió en el presente caso la parte demandante recurrente.

*Se dictará sentencia de conformidad.*

Los Jueces Asociados Señores Negrón García y Alonso Alonso se inhibieron.