# 2006 DTA 100

## TRIBUNAL DE APELACIONES
## REGIÓN JUDICIAL DE CAROLINA/HUMACAO/AIBONITO
## PANEL XIII

FEDERICO SÁNCHEZ ENCARNACIÓN T/C/C FEDERICO RIVERA ENCARNACIÓN
Demandante-Recurrido

v.

NORMA VIRGINIA SÁNCHEZ BRUNET, WILLIAM JIMÉNEZ RIVERA, POR SI Y EN REPRESENTACIÓN DE LA SOCIEDAD LEGAL DE GANANCIALES CONSTITUIDA ENTRE AMBOS; LISA MILAGROS SÁNCHEZ LÁTIMER, ALBACEA TESTAMENTARIO Y CONTADOR-PARTIDOR
Demandado-Recurrente, el último

----------

*IN RE*: FELIPE BENICIO SÁNCHEZ RIVERA, *EX PARTE*

NORMA VIRGINIA SÁNCHEZ BRUNET Y SU ESPOSO WILLIAM JIMÉNEZ RIVERA Y LA SOCIEDAD LEGAL DE GANANCIALES POR ELLOS COMPUESTA
Promovente-Recurrente

Núm. KLCE-2005-00654

San Juan, Puerto Rico, a 13 de julio de 2006

Panel integrado por su Presidente, el Juez Rivera Román,
y los Jueces Soler Aquino y Coll Martí

Rivera Román, Juez Ponente

**TEXTO COMPLETO DE LA SENTENCIA**

Nos corresponde resolver si la participación hereditaria de un hijo que logró su filiación luego de prevalecer en un juicio contencioso debe verse afectada por los honorarios pagados al abogado del Albacea que compareció al Tribunal en oposición a su reclamo como hijo y legítimo heredero. Respondemos la interrogante en la negativa; por tanto, confirmamos la determinación del Tribunal de Primera Instancia (en adelante T.P.I.).

**I**

Don Carlos Juan Sánchez Cabezas (en adelante don Carlos) falleció el 21 de junio de 1996 habiendo otorgado testamento abierto ante el Notario Público Lagarde Garcés, Escritura Número Cuatro de 9 de agosto de 1982. En el referido testamento, don Carlos nombró como Albacea y Contador Partidor a su hermano, el licenciado Felipe Benicio Sánchez Cabezas, e instituyó como herederas a sus hijas doña Norma Virginia Sánchez Brunet y doña Lisa Milagros Sánchez Látimer.

Don Carlos dispuso que sus hijas participarían en partes iguales de la legítima estricta, pero sólo su hija doña Norma Virginia participaría del tercio de mejora. Dispuso, además, que el tercio de libre disposición correspondería íntegramente a su esposa doña Catalina Brunet Ramos. No obstante, doña Catalina premurió a don Carlos el 4 de junio de 1993 por lo que su participación en el caudal revirtió a la masa hereditaria. █

El licenciado Sánchez Rivera aceptó su cargo como Albacea y solicitó las cartas testamentarias para iniciar el proceso de partición. Meses más tarde, el 4 de marzo de 1997, don Federico Sánchez Encarnación, también conocido como Federico Rivera Encarnación (en adelante don Federico), presentó demanda sobre filiación y nulidad de la institución de herederos y otros extremos contra las herederas doña Norma Virginia Sánchez Brunet y doña Lisa Milagros Sánchez Látimer, el esposo de Sánchez Brunet, don William Jiménez Rivero por sí

y en representación de la sociedad legal de gananciales compuesta entre ambos, y el licenciado Sánchez Rivera como Albacea y Contador Partidor.

Tras celebrar una vista en el caso sobre cartas testamentarias, el T.P.I. autorizó en ese proceso la intervención de don Federico. Se autorizó, además, al Albacea contratar a un abogado para que lo representara en los trámites relativos a la herencia y en el caso de filiación incoado por don Federico. Los honorarios del abogado serían satisfechos con los bienes pertenecientes al caudal hereditario.

De esta determinación recurrieron ante el Tribunal de Apelaciones durante el año 1997 el Albacea y una de las hijas de don Carlos, doña Lisa Milagros. A solicitud del Albacea, el Tribunal de Apelaciones revocó la resolución del T.P.I. que autorizaba a don Federico a intervenir en los procedimientos referentes a las cartas testamentarias. En cuanto a la petición de doña Lisa Milagros, el foro apelativo confirmó la autorización concedida al Albacea para contratar a un abogado con cargo a los bienes del caudal.

Como consecuencia de la sentencia del Tribunal de Apelaciones (en los casos KLCE-97-00790 y KLCE-97-00809), don Federico no fue autorizado a intervenir en el caso de las cartas testamentarias y, por ende, tampoco pudo intervenir en la decisión del T.P.I. que autorizó al Albacea a contratar un abogado para la defensa del caudal hereditario en el pleito de filiación.

Luego de varios trámites procesales, el 2 de noviembre de 2002, el Albacea presentó el *Informe de Partición y Adjudicación de Bienes Hereditarios del Causante Carlos Juan Sánchez Cabezas*. De los bienes de la herencia se dedujeron las deudas y los gastos, incluyendo la partida de $125,000 para satisfacer los honorarios del abogado del Albacea.

Los demás bienes fueron adjudicados a las herederas doña Norma Virginia Sánchez Brunet y doña Lisa Milagros Sánchez Látimer de conformidad a lo dispuesto por don Carlos en su testamento. No obstante, de los bienes adjudicados a las herederas se reservaron, en cuanto al tercio de legítima estricta y de libre disposición, bienes equivalentes a $549,367 que le corresponderían a don Federico en la eventualidad de que prevaleciera en el pleito de filiación.

A la vista para aprobar el *Informe de Partición* comparecieron las partes representadas por sus respectivos abogados. También compareció don Federico en capacidad de observador, toda vez que su solicitud de intervención había sido negada. El *Informe de Partición*, sujeto a algunas condiciones, fue aprobado por el T.P. I. en 4 de marzo de 2003.

Don Federico prevaleció en su demanda de filiación conforme a la sentencia de 26 de marzo de 2003. El T.P.I. ordenó al Registro Demográfico a inscribir a don Federico como hijo de don Carlos Juan Sánchez Cabezas para todos los efectos legales y declaró nula la institución de herederos por preterición de un heredero forzoso.

Así las cosas, el 18 de febrero de 2005, el Tribunal *a quo* relevó de sus funciones al Albacea y Contador Partidor y autorizó el pago final de $102,366 por honorarios a su abogado.

Con relación a la orden de pago de honorarios de abogado, don Federico solicitó al T.P.I. que advirtiera a las coherederas su obligación de consignar la cantidad que se descontó de su participación del caudal para satisfacer los honorarios en el caso de filiación. Basándose en las facturas sometidas por el abogado, calculó que la cantidad ascendía a $51,715. El T.P.I. ordenó a las coherederas a consignar la cantidad correspondiente y les concedió un término que luego extendió hasta el 30 de junio de 2005 para permitirle a las partes estudiar el informe del Albacea sobre la cantidad adeudada. El T.P.I. declaró *no ha lugar* las dos solicitudes de reconsideración a la orden de consignación presentada por doña Norma Virginia y su esposo.

Inconformes con la decisión, recurren ante nos y sostienen, en síntesis, que incidió el foro de instancia al ordenar la consignación del monto que corresponde a la participación de su hermano don Federico y que se utilizó para satisfacer los honorarios del abogado del Albacea en el pleito de filiación. Veamos.

## II
### El rol del Albacea en el proceso de filiación

Sabido es que la filiación incide con gran intensidad sobre nuestra identidad jurídica y sicológica. *Mayol v. Torres*, **2005 J.T.S. 50**, 164 D.P.R. ___ (2005). Una vez establecida la filiación, la persona adquiere todos los derechos —apellido, alimentos y herencia— que reconoce la ley. Art. 118 del Código Civil, 32 L.P.R.A. sec. 466; *Ocasio v. Díaz*, 88 D.P.R. 676, 748 (1963). En vista de ello, el Tribunal Supremo de Puerto Rico ha adoptado la política pública a favor de la verdadera filiación, "*para que brille la verdad y se reconozca a todos los fines legales la relación biológica entre padres e hijos*". *Sánchez v. Sánchez*, 154 D.P.R. 645, 662 (2001). Véase, además, *Mayol v. Torres, supra*; *Ramos v. Marrero*, 116 D.P.R. 357, 370-371 (1985).

Por consiguiente, la reclamación de filiación puede ejercitarse durante la vida del presunto padre o un año después de su muerte. Art. 126 del Código Civil, 31 L.P.R.A. sec. 505; *Sánchez v. Sánchez, supra*, pág. 675.

El Albacea es la persona que el causante designa mediante testamento para que de cumplimiento y ejecute su última voluntad. E. González Tejera, *Derecho de Sucesiones*, San Juan, Ed. U.P.R., 2002, T.2, pág. 536. Tiene la obligación de cumplir su misión con arreglo a lo mandado por el testador y lo dispuesto en la ley.

Ante la ausencia de facultades especiales conferidas expresamente por el testador, el Albacea tendrá las facultades generales que dispone el Artículo 824 del Código Civil, 31 L.P.R.A. sec. 2521, entre ellas:

"*1. ...*

*2. ...*

*3. Vigilar sobre la ejecución de todo lo demás ordenado en el testamento, y sostener, siendo justo, su validez en juicio y fuera de él.*

*4. Tomar las precauciones necesarias para la conservación y custodia de los bienes, con intervención de los herederos presentes.*"

Los gastos en que incurra el Albacea en el descargo de sus funciones serán a cargo del caudal hereditario. Art. 586 del Código de Enjuiciamiento Civil, 32 L.P.R.A. sec. 2491. Así pues, el Albacea podrá solicitar el reembolso de todos los gastos que resulten de la defensa del testamento y la conservación y custodia de los bienes del caudal, incluyendo los honorarios de abogado. El hecho de que el Albacea sea abogado no impide que pueda delegar los asuntos legales a otro profesional del Derecho. González Tejera, *op. cit.*, pág. 556. En cualquier caso, el Albacea comparece en representación de los herederos y no en su carácter personal. *Paine v. Srio. de Hacienda*, 85 D.P.R. 817, 820 (1962).

El Albacea no está obligado a salir en defensa del testamento en cualquier circunstancia. La facultad del Albacea para defender su validez se limita a casos en que sea "*propio y justo*" según la ley y la política pública del Estado. González Tejera, *op. cit.*, págs. 573 y 581. Al defender la validez del testamento, el Albacea debe estar convencido de la razón o justicia conque obró el testador. Para ello, puede consultar con un abogado sobre la cuestión o cuestiones que se presenten. J. Manresa y Navarro, *Comentarios al Código Civil Español*, Madrid, Ed. Reus, S.A., 1973, T.II, Vol. VI, pág. 683. Cuando la disposición que se impugna es, a todas luces, contraria a Derecho, el Albacea puede y debe allanarse al remedio solicitado y evitar a la sucesión el costo de litigar el

caso. González Tejera, *op. cit.,* pág. 573.

Es evidente que los gastos a cargo del caudal tienen la consecuencia de disminuir la participación correspondiente a cada heredero. Por eso, ante la oposición de alguno de los herederos, el Albacea puede solicitar al Tribunal que autorice el gasto. El Tribunal concederá la solicitud si considera que la gestión es en defensa y beneficio de los bienes del caudal y su costo es razonable en relación con éstos.

Una persona que cree tener derecho a participar del caudal relicto, pero el causante no le nombrara en su testamento, puede solicitar la nulidad de la institución de herederos por preterición.

La preterición ocurre cuando el testador deja de nombrar a un heredero forzoso en su testamento por error o inadvertencia. La preterición produce la nulidad de la institución de herederos, pero se mantienen las mejoras y los legados, siempre y cuando no sean inoficiosos. Art. 742 del Código Civil, 31 L.P.R.A. sec. 2368.

La preterición puede plantearse en cualquier momento, incluso después de practicada la partición de la herencia; por ejemplo, cuando se establece la filiación con posterioridad a la muerte del causante. *Ocasio v. Díaz, supra.*

La acción de impugnación de testamento por preterición no tiene la consecuencia de reducir ni afectar la integridad del caudal encomendado al Albacea para su protección, sino que provoca una distribución del caudal entre un número mayor de herederos por lo cual se reduce la participación de éstos.

## III
### El pago de honorarios

La Regla 44.1(d) de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, faculta al Tribunal a imponer a una parte que haya procedido con temeridad o frivolidad en la tramitación de un caso, la responsabilidad de pagar una suma por concepto de honorarios de abogado.

La imposición de honorarios persigue evitar la litigación frívola y penalizar o sancionar a la parte que por su temeridad, obstinación, contumacia, obliga a la otra parte a asumir y sufrir las molestias, gastos e inconveniencias de un litigio. Por tanto, cuando el demandado que resulta vencido en un litigio se defiende injustificadamente o prolonga innecesariamente el caso, procede la imposición de honorarios de abogado como sanción. *Corpak, Art Printing v. Ramallo Brothers*, 125 D.P.R. 724, 736 (1990); *Fernández v. San Juan Cement Co., Inc., supra*, págs. 718-719.

El factor determinante al imponer la partida de honorarios de abogado es el grado o intensidad de la conducta temeraria y no la cantidad de dinero que la parte realmente satisface a su representación legal. Otros factores que inciden sobre la determinación de la cuantía que el Tribunal puede conceder son la naturaleza del litigio, las cuestiones de derecho envueltas, los esfuerzos y la actividad profesional que haya tenido que desplegarse. *Corpak, Art. Printing v. Ramallo Brothers, supra*, pág. 738.

En su recurso de *Certiorari,* doña Norma Virginia y su esposo sostienen que los honorarios que solicita don Federico equivalen a los honorarios de abogado que se imponen como sanción a la parte perdidosa que actúa con temeridad. Sostienen que el T.P.I. no estimó que el Albacea o las coherederas actuaran con temeridad en el caso de filiación; por tanto, no les impuso honorarios de abogado. Sostienen, además, que de entenderlo procedente, don Federico debió solicitar los honorarios dentro del término de 10 días de emitida la sentencia, conforme faculta la Regla 44.1 de Procedimiento Civil, *supra.* No tienen razón.

La solicitud de don Federico para el reembolso de los honorarios del abogado del Albacea, relacionados al

caso de filiación, es distinta a la solicitud de imposición de honorarios de abogado, amparada en la Regla 44.1 de las de Procedimiento Civil, *supra*, disponible a la parte que prevalece en un pleito.

Resumimos en forma esquemática las partes comparecientes en la demanda de filiación para propósitos de facilitar la discusión. Por la parte demandante compareció don Federico representado por su abogada. Por la parte demandada comparecieron el Albacea y las coherederas, cada uno de ellos representado por su abogado particular. Don Federico prevaleció en su solicitud de filiación sobre la oposición del Albacea y las coherederas, doña Norma Virginia y doña Lisa Milagros.

Bajo el esquema anterior, el T.P.I. tenía discreción para imponer honorarios de abogado como sanción contra el Albacea y las coherederas. En tal caso, la cantidad concedida serviría para atenuar los gastos de litigación en que incurrió don Federico por la temeridad, obstinación o contumacia de la parte perdidosa.

Distinto es el caso de los honorarios del abogado del Albacea que don Federico solicita le sean reembolsados en proporción a su cuota hereditaria. Según el esquema esbozado, el resultado del argumento de doña Norma Virginia y su esposo sería que, además de satisfacer los honorarios de su representación legal en el pleito de filiación, don Federico vendría obligado a contribuir en dos novenas partes de los honorarios del abogado del Albacea que litigó en su contra. Tal resultado es incompatible con elementos básicos de justicia.

El Albacea compareció en el pleito de filiación porque fue demandado como parte por don Federico. No obstante, el deber del Albacea debe limitarse a conservar los bienes del caudal y defender el testamento cuando éste sea correcto en derecho y justo. El reclamo de un hijo para lograr su verdadera filiación no ataca la solvencia o integridad del caudal y sólo afecta la validez del testamento en cuanto a proteger para el hijo preterido su participación del caudal.

Tampoco existe duda de que la representación legal del abogado del Albacea en el caso de filiación resultó antagónica a los intereses de don Federico y que las únicas personas que hubiesen resultado perjudicadas, si don Federico prevalecía en su reclamación de filiación, eran las coherederas doña Norma Virginia y doña Lisa Milagros. Resulta improcedente y contrario a la justicia, imponer a don Federico la carga de satisfacer los honorarios del licenciado que se opuso a su reclamo de filiación. Repetimos, el pleito de filiación no reducía el caudal que protegía el Albacea. De proceder la filiación, el caudal se dividiría entre tres hijos en vez de dos.

Por otro lado, argumentan doña Norma Virginia y su esposo que la solicitud de don Federico es tardía. Razonan, en primer lugar, que don Federico no se opuso ni condicionó su aprobación al *Informe de Partición* a que los honorarios del abogado del Albacea, a satisfacerse con los bienes no adjudicados del caudal, no se relacionaran al caso de filiación. En segundo lugar, razonan que aun ante la oposición de don Federico, el Albacea contaba con la autorización del Tribunal para contratar representación legal con cargo al caudal para los asuntos relacionados al caso de filiación. Afirman que el asunto constituye cosa juzgada, toda vez que fue adjudicado por el T.P.I. y confirmado por el Tribunal de Apelaciones mediante sentencia final y firme de 23 de febrero de 1998. El argumento no es correcto.

Para que aplique la defensa de cosa juzgada "*es necesario que entre el caso resuelto por la sentencia y aquél en que ésta sea invocada, concurra la más perfecta identidad entre las cosas, las causas, las personas de los litigantes y la calidad con que lo fueron*". Art. 1204 del Código Civil, 31 L.P.R.A. sec. 3343; *Fatach v. Triple S, Inc.*, 147 D.P.R. 882, 889 (1999); *Rodríguez Rodríguez v. Colberg Comas*, 131 D.P.R. 212, 219 (1992); *Díaz v. Navieras de P.R.*, 118 D.P.R. 297, 304-305 (1987).

Tal identidad no existe entre el caso adjudicado por el Tribunal de Apelaciones en febrero de 1998 y el presente caso. Recordemos que en aquella ocasión fue doña Lisa Milagros quien compareció ante nos a cuestionar la resolución del T.P.I. que permitía al Albacea contratar a un abogado a cargo del caudal hereditario.

■ De hecho, por disposición de la sentencia aludida, don Federico no podía ser parte en ningún procedimiento relacionado a la herencia hasta tanto se adjudicara su caso de filiación.

Recuérdese que la autorización del Albacea para contratar abogado ocurre en el pleito que el Tribunal de Apelaciones resolvió que don Federico no podía intervenir. Por tanto, para todos los efectos, don Federico carecía de legitimación para oponerse o condicionar la aprobación del *Informe de Partición* presentado por el Albacea o cuestionar las determinaciones del Tribunal *a quo* en aquel momento. Por lo tanto, es inaplicable la defensa de cosa juzgada.

Finalmente, doña Norma Virginia y su esposo se oponen a la orden de consignación sin previa celebración de una vista en la que se les permita refutar la suma de honorarios de abogado que reclama don Federico. De los hechos reseñados surge que en 27 de junio de 2005, el T.P.I. extendió el término original concedido a las coherederas para consignar el pago con el propósito de permitir a las partes estudiar el informe que el Albacea presentara por escrito confirmando "*la cantidad exacta adeudada en concepto de los honorarios legales en el pleito de filiación y nulidad de institución de herederos*". Véase Orden del T.P.I. de 27 de junio de 2005. De manera que el T.P.I. deberá, en primera instancia, definir la cantidad exacta de honorarios que reclama el abogado del Albacea para hacer eficaz su orden de que se consigne el dinero.

## IV

Por los fundamentos antes expuestos, se expide el auto de *certiorari* y se confirma la resolución del Tribunal de Primera Instancia. Se devuelve el caso a la Sala de origen para que determine la cuantía específica de honorarios del Albacea en el pleito de filiación, la cual será satisfecha por las coherederas doña Norma Virginia Sánchez Brunet y doña Lisa Milagros Sánchez Látimer, según lo intimado.

Así lo pronunció el Tribunal y lo certifica la Secretaria.

Lcda. Laura M. Vélez Vélez
Secretaria del Tribunal de Apelaciones

**ESCOLIOS 2006 DTA 100**

**1.** Sentencia del Tribunal de Apelaciones en *Sánchez v. Sánchez Encarnación T/C/C Rivera Encarnación*, KLCE-97-00790 y KLCE-97-00809, pág. 3; Informe de Partición de Bienes Hereditarios, pág. 2.

**2.** Así se desprende de los autos en KLCE-97-00790 y KLCE-97-00809.