Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL X

| HÉCTOR RUBÉN MÁRQUEZ VILLANUEVA<br><br>*Apelante*<br><br>v.<br><br>WANDA MARGARITA BURGOS RODRÍGUEZ Y OTROS<br><br>*Apelados* | KLAN202300708 | Apelación procedente del Tribunal de Primera Instancia, Sala Superior de Carolina<br><br>Civil Núm.: CA2020CV01898 (Civil 408)<br><br>Sobre:<br>Acción Resolutoria |
|---|---|---|

Panel integrado por su presidenta, la Juez Lebrón Nieves, la Juez Barresi Ramos y la Jueza Santiago Calderón

Santiago Calderón, Jueza Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 6 de marzo de 2024.

Comparece ante nos el señor Héctor Rubén Márquez Villanueva (señor Márquez Villanueva o parte apelante) mediante recurso de *Apelación* y nos solicita que revoquemos la *Sentencia*[1] emitida el 14 de julio de 2023, notificada el 17 de julio de 2023, por el Tribunal de Primera Instancia, Sala Superior de Carolina (TPI o foro primario). Mediante el referido dictamen, el TPI declaró No Ha Lugar la *Demanda* incoada por la parte apelante y le impuso el pago de honorarios por temeridad.

Por los fundamentos que exponemos a continuación, **confirmamos** la *Sentencia* apelada.

### I.

Según surge del expediente apelativo, el 8 de septiembre de 2020, la parte apelante presentó una *Demanda*[2] sobre incumplimiento de contrato y daños en contra de la señora Wanda Margarita Burgos Rodríguez, el señor Mario Peguero y la Sociedad

---

[1] Véase Apéndice del recurso de *Apelación*, págs. 1-12.
[2] Véase Apéndice del recurso de *Apelación*, págs. 13-28.

Número Identificador
SEN2024_____

Legal de Gananciales compuesta por ambos (en conjunto, parte apelada). En síntesis, la parte apelante alegó que el 21 de octubre de 2014, las partes otorgaron la Escritura Pública Número Ocho (8) sobre Compraventa Asumiendo Hipoteca (Escritura Núm. Ocho), mediante la cual vendió a la parte apelada un bien inmueble sito en Trujillo Alto, Puerto Rico, por el precio de $126,000.00, de los cuales $96,000.00 correspondían al balance pendiente de la hipoteca que gravaba la propiedad. La parte apelante añadió que, la cláusula sexta de la Escritura Núm. Ocho incluía como condición que si la parte apelada no pagaba la hipoteca, esta debía devolver la titularidad de la propiedad. Seguidamente, señaló que la parte apelada dejó de pagar la hipoteca, por lo que adeudaba la suma de $2,892.75 por concepto de atrasos, los cuales presuntamente la institución bancaria estaba cobrando al señor Márquez Villanueva. Ante ello, solicitó la rescisión del negocio jurídico, así como la restitución de la posesión y titularidad de la propiedad. Asimismo, reclamó la suma de $50,000.00 por concepto de daños y angustias mentales.

El 17 de noviembre de 2020, la parte apelada presentó su *Contestación a Demanda y Reconvención*[3]. En su alegación responsiva, la parte apelada negó la mayoría de las alegaciones en su contra y presentó varias defensas afirmativas. En cuanto a la reconvención, alegó que la cláusula sexta de la Escritura Núm. Ocho es contraria a la ley, la moral y el orden público por entender que les pretende despojar de la propiedad sin un debido proceso de ley. La parte apelada sostuvo que ha cumplido con su obligación de pago. Por tanto, solicitó la suma de $100,000.00 por concepto de daños y angustias mentales, así como el pago de $15,000.00 por costas, gastos y honorarios de abogado.

---

[3] Véase Apéndice del recurso de *Apelación*, págs. 29-42.

El 27 de noviembre de 2020, la parte apelante presentó *Contestación a Reconvención*[4], en la que negó las alegaciones de la reconvención y reiteró que la parte apelada incumplió con los pagos de la hipoteca. De esta forma, alegó tener derecho a rescindir un acuerdo válido incumplido por la parte apelada.

El 11 de diciembre de 2021, la parte apelada compareció mediante *Contestación Enmendada a la Demanda y Reconvención*. El 14 de diciembre de 2021, la parte apelante presentó una *Contestación a Reconvención Enmendada*.

Tras varias incidencias procesales innecesarias pormenorizar para atender el recurso, el 29 de junio de 2023, el TPI celebró el juicio en su fondo, en el cual se dilucidó la controversia de daños contractuales, única controversia pendiente[5]. Según se desprende del expediente, las partes sometieron en el juicio la siguiente prueba documental estipulada:

1. Instrumento público número 8 de 21 de octubre de 2014, escritura de compraventa y asumiendo hipoteca, otorgada ante el notario Jaime Alberto Santos Santiago.

2. "*Payoff Statement*" de 5 de octubre de 2021.

3. Carta de la Cooperativa de Ahorro y Crédito de Mayagüez con fecha de 13 de octubre de 2021, sobre trámite de saldo de préstamo hipotecario número 27784685 a nombre de Héctor Márquez.

4. Cheque número 025132 a favor de Select Portfolio Servicing, Inc. por la suma de $87,137.54, con fecha 19 de octubre de 2021.

5. Carta de saldo de hipoteca de 1 de noviembre de 2021, enviada por Select Portfolio Servicing (SPS) a la parte demandante, evidencia de pago a SPS, Inc. por $87,137.54 liberando a la parte demandante de la hipoteca.

6. Pagaré hipotecario juramentado en el testimonio 4,556, el 13 de octubre de 2021 ante el notario Félix Rafael Passalaqua.

7. Acta Sobre Designación de Hogar Seguro, instrumento público número 6, otorgado el 16 de octubre de 2020, ante el notario Ian Alejandro Lebrón Ward.

---

[4] Véase Apéndice del recurso de *Apelación*, págs. 43-44.

[5] El Lcdo. Morales Arroyo, representante legal de la parte apelante, manifestó durante el juicio en su fondo que la transacción de compraventa y liberación de hipoteca estaba finalizada y que solamente se estaría dilucidando la controversia sobre daños contractuales. Véase, transcripción de la prueba oral, págs. 7-8.

8. Historial de pagos por parte demandada a Banco Popular y Select Portfolio Servicing durante los años 2018, 2019 y 2020.
9. Certificación registral de la Finca 3081-012632 emitida por el Registrador de la Propiedad.

Consecuentemente, el 14 de julio de 2023, notificada el 17 de julio de 2023, el Tribunal emitió la *Sentencia*[6] apelada en la que formuló diecinueve (19) determinaciones de hechos. En su dictamen, el foro primario declaró No Ha Lugar la demanda instada por la parte apelante y le impuso a esta parte el pago de honorarios por temeridad por la suma de $10,000.00 con interés legal de 8.00%. Además, declaró No Ha Lugar las demás reclamaciones incoadas en el caso. El TPI concluyó lo siguiente:

> Los documentos presentados ante el tribunal demuestran que desde el 21 de octubre de 2014 la parte demandada [aquí parte apelada] cumplió cabalmente con los pagos de la hipoteca. Asimismo, la evidencia documental demuestra que el 13 de octubre de 2021 la parte demandada refinanció el inmueble y liberó a la parte demandante de la hipoteca que gravaba el mismo, tal como acordado en la escritura de compraventa, a pesar de todos los eventos exógenos e imprevisibles que ocurrieron durante el período de cinco años.
>
> Tomando en consideración lo manifestado por la representación legal de la parte demandante durante el juicio, que constituye una admisión a la luz de la Regla 803(c) de las de Evidencia, en el sentido de que se completó la transacción de compraventa, resolvemos que no existe controversia en cuanto a la titularidad del inmueble a favor de la parte demandada y procedemos a evaluar la existencia de daños contractuales.
>
> La parte demandante [aquí parte apelante], que tenía el peso de la prueba para demostrar la existencia de tales daños; no presentó ninguna evidencia, ni probó mediante preponderancia de prueba, la existencia de algún daño contractual. El testimonio de la parte demandante, que se limitó a mencionar de manera general que los daños fueron: tensión causada por la situación, que no le aprobaron una tarjeta de crédito de [Walmart] y que se vió afectada una relación que tenía; lo expresado no es evidencia suficiente que mueva al tribunal a determinar que exista la existencia de tales daños contractuales; mucho menos que exista un nexo entre esos alegados daños y la parte demandada.

[…][7]

En desacuerdo con la determinación, el 11 de agosto de 2023, la parte apelante compareció ante nos mediante el recurso de epígrafe y le imputó al TPI la comisión de los siguientes errores:

---

[6] Véase apéndice del recurso, págs. 1-12.
[7] Véase apéndice del recurso, págs. 10-11.

Erró el TPI en la apreciación de la prueba testifical al no realizar un análisis justo y balanceado de la misma.

Erró el TPI al imponer honorarios de abogado en las circunstancias de este caso.

El 14 de agosto de 2023, la parte apelante presentó *Moción de Término para Someter Transcripción de la Prueba Oral*. Por ello, el 17 de agosto de 2023, emitimos una *Resolución* en la que autorizamos la solicitud para someter la transcripción y le concedimos término a las partes a los fines de perfeccionar el recurso.

El 8 de septiembre de 2023, la parte apelada compareció mediante *Alegato en Oposición al Recurso de Apelación por Héctor Rubén Márquez Villanueva.*

Luego, el 30 de noviembre de 2023, las partes comparecieron mediante *Moción Conjunta Estipulando Transcripción.*

Con el beneficio de la comparecencia de las partes, así como la transcripción de la prueba oral estipulada, procedemos a resolver.

**II.**

**-A-**

Es norma reiterada que las determinaciones de hechos y la adjudicación de credibilidad que hace un foro de instancia son merecedoras de gran deferencia por parte de los tribunales apelativos debido a la oportunidad que tiene el juzgador de hecho en dicho foro de observar y escuchar a los testigos. Así pues, un tribunal apelativo no debe intervenir con las referidas determinaciones de hechos ni con la adjudicación de credibilidad que haya hecho el Tribunal de Primera Instancia, salvo que medie pasión, prejuicio, parcialidad o error manifiesto[8]. Solo ante la presencia de estos elementos o cuando la apreciación de la prueba

---

[8] *Santiago Montañez v. Fresenius Medical,* 195 DPR 476, 490 (2016), *Serrano Muñiz v. Auxilio Mutuo,* 171 DPR 717, 741 (2007); *In re Ruiz Rivera,* 168 DPR 246 (2006)*; Álvarez v. Rivera,* 165 DPR 1, 25 (2005); *López Delgado v. Cañizares,* 163 DPR 119 (2004); *Hernández v. San Lorenzo Const.,* 153 DPR 405, 424-425 (2001).

no concuerde con la realidad fáctica es que un foro apelativo debe intervenir con la apreciación efectuada[9].

Ahora bien, nuestro Tribunal Supremo ha expresado que "[a]unque el arbitrio del juzgador de hechos es respetable, y merece deferencia, no es absoluto"[10]. Por eso, la apreciación errónea de la prueba no tiene credenciales de inmunidad frente a la función revisora de un tribunal apelativo[11]. Cuando del examen de la prueba se desprende que el juzgador descartó injustificadamente elementos probatorios importantes o fundó su criterio en testimonios improbables o imposibles, el Tribunal Supremo ha justificado la intervención del tribunal apelativo con la apreciación de la prueba realizada por el tribunal sentenciador[12]. El Tribunal Supremo reiteró estos principios y expresó que "el nivel de pasión, prejuicio o parcialidad que hace falta demostrar para impugnar exitosamente las determinaciones del foro primario sobre los hechos varía de caso a caso"[13]. Ante una alegación de este tipo, los foros apelativos debemos evaluar si el juzgador cumplió su función judicial de adjudicar la controversia específicamente conforme a derecho y de manera imparcial, pues solo así podremos descansar con seguridad en sus determinaciones de hechos[14].

En fin, como foro apelativo podemos intervenir únicamente con la apreciación de la prueba oral que haga el foro recurrido cuando este actúe con pasión, prejuicio, parcialidad, o cuando cometa un error manifiesto. Si no se demuestra que la sentencia fue dictada en esas circunstancias, tales determinaciones deben respetarse en la etapa de apelación.

---

[9] *Pueblo v. Santiago et al.,* 176 DPR 133 (2009); *Pueblo v. Irizarry,* 156 DPR 780 (2002); *Pueblo v. Acevedo Estrada,* 150 DPR 84, 99 (2000).
[10] *Dávila Nieves v. Meléndez Marín,* 187 DPR 750, 771 (2013), *Méndez v. Morales,* 142 DPR 26 (1996).
[11] *Íd.*
[12] *C. Brewer P.R., Inc. v. Rodríguez,* 100 DPR 826, 830 (1972).
[13] *Dávila Nieves v. Meléndez Marín, supra,* págs. 775-776.
[14] *Íd.,* pág. 777.

**-B-**

En cuanto a la evaluación y suficiencia de prueba, la Regla 110 de las de Evidencia dispone, en lo pertinente, que:

La juzgadora o el juzgador de hechos deberá evaluar la evidencia presentada con el propósito de determinar cuáles hechos han quedado establecidos o demostrados, con sujeción a los principios siguientes:

(a) El peso de la prueba recae sobre la parte que resultaría vencida de no presentarse evidencia por alguna de las partes.

(b) La obligación de presentar evidencia primeramente recae sobre la parte que sostiene la afirmativa en el asunto en controversia.

(c) Para establecer un hecho, no se exige aquel grado de prueba que, excluyendo posibilidad de error, produzca absoluta certeza.

[…]

(f) En los casos civiles, la decisión de la juzgadora o del juzgador se hará mediante la preponderancia de la prueba a base de criterios de probabilidad, a menos que exista disposición al contrario. En los casos criminales, la culpabilidad de la persona acusada debe ser establecida más allá de duda razonable. [15]

Como regla general, en los litigios civiles la presentación de evidencia le corresponde a la parte que hace la alegación que sirve de base a una reclamación[16].

Por otro lado, el juzgador de los hechos deberá aplicar el estándar de la preponderancia de la prueba para determinar su suficiencia de la prueba. El Tribunal deberá determinar si la evidencia presentada es suficiente para convencer al juzgador de la veracidad de los hechos alegados[17]. Sobre la prueba a presentarse, el Tribunal Supremo ha sido enfático en señalar que no bastará con meras alegaciones o teorías, **sino que es necesario que se presente evidencia real para probar la causa de acción**[18].

**-C-**

La Regla 44.1 de Procedimiento Civil, faculta a los tribunales a imponer el pago de una cuantía por concepto de honorarios de abogado. Al respecto, la referida disposición establece lo siguiente:

---

[15] 32 LPRA Ap. VI, R. 110.

[16] *Rivera Figueroa v. The Fuller Brush Co.,* 180 DPR 894, 912-913 (2011).

[17] *Belk v. Martínez,* 146 DPR 215, 231 (1998).

[18] *U.P.R. v. Hernández,* 184 DPR 1001, 1013 (2012); *Pereira Suárez v. Jta. Dir. Cond.,* 182 DPR 485, 510 (2011).

[...]

d) En caso que cualquier parte o su abogado o abogada haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al responsable el pago de una suma por concepto de honorarios de abogado que el tribunal entienda correspondan a tal conducta. [...][19].

La temeridad se ha descrito como un comportamiento que incide en los procesos judiciales y afecta, tanto el buen funcionamiento de los tribunales, como la administración de la justicia[20]. La temeridad permite que se celebre o se prolongue un litigio innecesariamente u obliga a otra parte a litigar por su contumacia u obstinación[21]. De modo que, el propósito de la imposición de honorarios por temeridad es penalizar a la parte que, por su terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte, innecesariamente, a asumir las molestias, gastos, trabajo e inconveniencias de un pleito[22].

Así pues, una vez el foro primario determina que una parte incurrió en conducta temeraria, procede la imposición de los honorarios de abogado a favor de la otra parte[23]. La determinación de temeridad es de índole discrecional, por lo que sólo debemos intervenir con ella cuando nos enfrentemos a un caso de abuso de discreción[24].

**III.**

La determinación que nos ocupa está acompañada de una presunción de corrección[25]. Corresponde a la parte apelante colocarnos en posición de apartarnos de la deferencia que otorgamos

---

[19] 32 LPRA Ap. V, R. 44.1.
[20] *Torres Montalvo v. Gobernador ELA*, 194 DPR 760, 778 (2016); *Meléndez Vega v. El Vocero de PR*, 189 DPR 123, 212 (2013).
[21] *Jarra Corp. v. Axxis Corp.*, 155 DPR 764, 779 (2001).
[22] A*ndamios de PR v. Newport Bonding*, 179 DPR 503, 520 (2010); *Rivera v. Tiendas Pitusa, Inc.,* 148 DPR 695, 702 (1999); *Ramírez v. Club Cala de Palmas*, 123 DPR 339, 349-350 (1989); *Fernández v. San Juan Cement Co., Inc.* 118 DPR 713, 718 (1987).
[23] *Meléndez Vega v. El Vocero de PR, supra,* pág. 211; *Maderas Tratadas v. Sun. Alliance et al.*, 185 DPR 880, 925 (2012).
[24] *Flores Berger v. Colberg*, 173 DPR 843, 866 (2008).
[25] *Vargas v. González*, 149 DPR 859, 866 (1999).

a los dictámenes del TPI que es quien ve y escucha a los testigos. Por eso, la parte apelante no puede descansar meramente en sus alegaciones. Por el contrario, tiene el peso de rebatir la presunción de corrección que gozan las actuaciones de los tribunales de primera instancia[26].

En su primer señalamiento de error, la parte apelante cuestiona la apreciación de la prueba testifical por parte del TPI al emitir la *Sentencia* mediante la cual declaró no ha lugar la demanda incoada por éste. Particularmente, aduce que no hubo prueba en contrario de que, debido al incumplimiento de la parte apelada con los términos del contrato de compraventa, se le denegó una tarjeta de crédito y perdió una relación sentimental, lo cual le ha causado daños y angustias mentales.

Tras realizar un examen minucioso del expediente ante nuestra consideración, particularmente los anejos y la trascripción de la prueba oral estipulada, colegimos que el primer error alegado por la parte apelante no fue cometido. Veamos.

De la transcripción de la prueba oral se desprende que, durante el examen directo, el señor Márquez Villanueva testificó sobre el presunto incumplimiento de la parte apelada y los daños sufridos por éste. En lo pertinente, testificó lo siguiente:

> […]
> P        Mire, ¿y cuánto...? Usted dice que la casa estaba atrasada. ¿cuánto estaba atrasada, cuando a usted le comunican por primera vez?
> R        Bueno, la casa debía, creo que eran seis meses, y estaba... y estaba ya... cuando me llamaron, porque ellos lograron llamarme y hablaron conmigo pa' hacer un plan de pago y yo les dije, "Mira, yo no puedo hacer un plan de pago porque la casa yo no la vivo, la casa yo... yo la vendí... --digo, la cuenta-- ...y yo voy hablar con mi abogado y entonces que él... que él hable con ellos, porque la casa estaba ya a ley de... de embargarse.
> P        ¿Y?
> R        De embargo.
> P        ...esto pasa cuánto tiempo después de que se firmó la escritura?
> R        En el 2021 o 2022 (fonética), por ahí, por ahí.
> […]

---

[26] *Pueblo v. Prieto Maysonet,* 103 DPR 102, 107 (1974).

P       Bien. Y cuando usted se enteró de que eso estaba pasando, ¿cómo usted se sintió?

R       Wow, se me fue el mundo encima, porque yo jamás pensé, porque como no me llegaban las cartas, porque ellos cambiaron la dirección, pues al ellos contactarme y… y decirme lo que está pasando, ya… Y decirme que la casa lo que quedaba era na' pa' remate, que ellos me querían ayudar, pero que… pero es que la casa yo no puedo ponerla al día, porque se supone que ellos tengan la obligación, porque hay un contrato firmado que ellos no podían dejar atrasar la casa en ningún momento.

[…]

P       Bien. ¿Y cómo le han afectado a usted esa situación, cómo le afectó, si de alguna manera?

R       Bueno, pues… pues no pude dormir y estuve tiempo con… con usted, con el licenciado aquí hablando y… y en verdad me preocupé demasiado de mucho, porque hasta… hasta… hasta la relación que tenía la perdí, porque no tenía… no tenía cabeza más que… más que en eso.

[…]

P       Mire, ¿y su crédito, cómo se afectó, si de alguna manera?

R       No tenía crédito en ningún lado. Una vez llené… una vez llené en Walmart y me lo denegaron.

[…][27]

Durante el contrainterrogatorio, el señor Márquez Villanueva manifestó lo siguiente:

[…]

P       Ah, o sea, que usted tuvo en ley de quiebra… ¿cuándo fue?

R       2010, 2011, más o menos, porque, verdad, no…

P       ¿Al momento de la venta usted estaba en quiebra?

R       Eso es correcto.

P       Okay. O sea, que usted no podía… no podía cumplir con sus obligaciones.

R       Eso es correcto.

P       Okay. La razón es ciertamente que usted estaba preocupado con el pago de la hipoteca, aún cuando usted no pudo cumplir con sus obligaciones previas.

R       Es correcto.

P       Ah, bien.

R       Ese fue… ese fue el acuerdo.

P       Ese fue el acuerdo. Que ciertamente, su crédito está dañado cuando usted vendió la casa, ¿correcto?

R       Correcto.

P       O sea, que tenía usted el crédito ya dañado. ¿Eso es así?

R       No, no dañado totalmente, porque estaba en ley de quiebra.

P       Estaba en quiebra, ciertamente, estaba quebrado.

R       Exacto.

P       Estaba quebrado. Muy bien. Y por tal razón tiene que aguantar… ¿qué periodo de tiempo estuvo… usted tuvo realmente para sanar y liberarse de la quiebra?

R       Ahora mismo hace dos años atrás.

P       Hace dos años atrás, en el 2021. Estamos en el 2023.

R       Eso es correcto.

---

[27] Véase transcripción de la prueba oral, págs. 19-21.

P        ¿En el 2021 usted sal… sal… fue liberado de la quiebra?

R        Ajá. Sí, porque después fue que hice crédito otra vez.

P        ¿Cuándo hizo crédito?

R        Fue un año, un año y medio, por ahí.

[…][28]

P        Okay, está bien. Entonces dice que a usted se le fue el mundo. ¿Fue al médico?

R        Siquiatra.

P        ¿Al siquiatra? ¿Tiene evidencia?

R        Sí.

P        ¿Dónde está la evidencia?, porque no se presentó aquí. Aquí (ininteligible). Y quién es el médico (ininteligible) que identifique en este momento?

R        Eso habría que hablar con él.

P        Ah, bueno, pues no está aquí en el tribunal. ¿Está en este momento aquí?

R        No.

[…][29]

P        ¿Solamente a usted le fue denegada una tarjeta de crédito en Walmart?

R        Eso es correcto.

P        ¿Solamente?

R        Sí.

P        ¿En qué año fue eso, qué año fue ese?

R        Algunos dos… dos años… por ahí, dos años y medio o dos años, por ahí.

[…][30]

P        …usted dijo que le llamaron del banco. ¿Quién le llamó del banco? Usted dijo eso, está bajo juramento.

[…]

P        O sea, no lo llamaron del banco, ¿y entonces cómo usted estableció realmente, si (ininteligible), si no lo llamaron del banco?

R        Me llamó la casa acreedora, que iba a embargar la casa. El banco le pasó la hipoteca a una casa cobradora y la casa pues me… me llamó a mí y me lo dijeron.

[…]

P        ¿Cuál fue la casa cobradora que lo llamó?

P        En específico.

R        …¿usted tiene la carta?

P        No, no, no diga usted, conteste usted.

[…]

R        Aquí ahora mismo no me acuerdo de eso.

[…]

P        No se ha presentado ninguna carta aquí. La carta que le enviaron no fue presentada. ¿Cuál carta?[31]

Luego de un detenido análisis del expediente de autos, en particular, la transcripción de la prueba oral, colegimos que el curso decisorio del TPI fue correcto y razonable. El foro primario resolvió basado en la prueba testifical y documental que surge del expediente y la aplicación correcta de la normativa jurídica a la insuficiencia de

---

[28] Véase transcripción de la prueba oral, págs. 25-27.
[29] Véase transcripción de la prueba oral, pág. 28.
[30] Véase transcripción de la prueba oral, pág. 29.
[31] Véase transcripción de la prueba oral, págs. 30-34.

prueba. Reiteramos que la parte apelante no probó haber sufrido algún daño como consecuencia del alegado incumplimiento contractual por la parte apelada.

Por otro lado, en cuanto al segundo señalamiento de error, al igual que el primero, es imprescindible analizar la transcripción de la prueba oral para evaluar si el foro primario abusó de su discreción al imponerle a la parte apelante honorarios de abogado por temeridad por la suma de $10,000.00.

En nuestro ordenamiento, la Regla 44.1(d) de Procedimiento Civil de 2009, *supra,* establece que cuando una parte o su representación legal "haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al responsable el pago de una suma por concepto de honorarios de abogado que el tribunal entienda correspondan a tal conducta"[32]. La imposición de honorarios de abogados es una práctica que recae en la sana discreción del tribunal sentenciador y solo se intervendrá con ella en caso en que dicho foro haya abusado de tal facultad[33].

Al imponer honorarios de abogado el foro primario tendrá que ponderar el grado o la intensidad de la conducta temeraria para determinar la cantidad que habrá de imponer por dicha conducta[34]. El Tribunal Supremo de Puerto Rico ha resuelto que la imposición de honorarios por temeridad, así como la cuantía, son asuntos discrecionales del Tribunal de Primera Instancia, que deberá guiarse por los siguientes factores: "(1) el grado de temeridad; (2) el trabajo realizado; (3) la duración y naturaleza del litigio; (4) la cuantía involucrada; y (5) el nivel profesional de los abogados"[35]. Al hacer tal determinación, el foro sentenciador puede declarar expresamente que la parte perdidosa fue temeraria e imponerle la cuantía de

---

[32] 32 LPRA Ap. V, R. 44.1.
[33] *Marrero Rosado v. Marrero Rosado*, 178 DPR 476 (2010).
[34] *Corpak, Art Printing v. Ramallo Brothers*, 125 DPR 724, 738 (1990).
[35] *C.O.P.R. v. S.P.U.*, 181 DPR 299, 342-343 (2011), que cita a Hernández Colón, *supra,* secc. 4402, pág. 391.

honorarios de abogado que entienda procedente o simplemente puede imponérselos en la parte dispositiva del dictamen, lo que implica que entendió que fue temeraria en la litigación[36].

Delimitando el amplio concepto de temeridad, el Tribunal Supremo ha reiterado que la temeridad no procede en litigios que encierran planteamientos complejos y novedosos aún no resueltos en nuestra jurisdicción[37]. Tampoco procede cuando la parte concernida responde a lo que resulta ser una apreciación errónea del derecho o una desavenencia honesta en cuanto a la aplicación del Derecho, especialmente cuando no existan precedentes vinculantes[38].

Las circunstancias antes mencionadas no están presentes en el caso de autos. Por el contrario, en el caso que nos ocupa, la parte apelante presentó una reclamación carente de prueba documental y testifical que sustentara las alegaciones presentadas. Por tanto, coincidimos con la determinación del foro primario, por lo cual el segundo error no fue cometido.

En virtud de lo anterior, consideramos que las conclusiones de derecho del TPI encuentran apoyo en la prueba que dicho foro tuvo ante su consideración. Cabe mencionar que, como parte de nuestra función revisora, debemos deferencia a la apreciación de la prueba por parte del juzgador, en ausencia de prejuicio, parcialidad o error manifiesto al aplicar el derecho a los hechos. A esos efectos, nos resulta forzoso concluir que la parte apelante descansó en meras alegaciones y no aportó prueba real para sostener sus reclamos.

---

[36] Véase, *Rivera v. Tiendas Pitusa, Inc., supra*, pág. 702, que cita con aprobación a *Montañez Cruz v. Metropolitana Cons. Corp.*, 87 DPR 38 (1962).
[37] *Meléndez Vega v. El Vocero de PR, supra*, pág. 212.
[38] *Íd.*

**IV.**

Por los fundamentos que anteceden, **confirmamos** la *Sentencia* apelada.

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


                                        Lcda. Lilia M. Oquendo Solís
                                    Secretaria del Tribunal de Apelaciones