Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL X

| HUMANS OF THE INTERNET LLC, SERIES 2

Apelada

v.

SERIES VI (SHARENETT) OF AEDIFEX CAPITAL, LLC

Apelante | KLAN202400760 | APELACIÓN procedente del Tribunal de Primera Instancia, Sala Superior de San Juan

Civil núm.: SJ2024CV00187

Sobre: Acceso a información de una compañía de responsabilidad limitada al ampro del Art. 19.20 de la Ley General de Corporaciones |
| --- | --- | --- |

Panel integrado por su presidenta la juez Lebrón Nieves, la jueza Romero García y el juez Rivera Torres.

**Rivera Torres, Juez Ponente**

### SENTENCIA

En San Juan, Puerto Rico, a 17 de octubre de 2024.

Comparece ante este tribunal apelativo, Series VI (Sharenett) of Aedifex Capital LLC (Series VI o el apelante), mediante el recurso de *Apelación* de epígrafe solicitándonos que revoquemos la *Sentencia* emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI), el 26 de junio de 2024, archivada en autos ese mismo día. Mediante este dictamen, el foro primario declaró *Ha Lugar* a la demanda instada por Humans of The Internet LLC, Series 2 (Humans o la apelada), más le impuso el pago de $20,000 en honorarios de abogado por temeridad y las costas del litigio.

Por los fundamentos que expondremos a continuación, modificamos el dictamen apelado, así modificado se confirma.

### I.

El 9 de enero de 2024, Humans presentó una *Demanda* sobre acceso a información de una compañía de responsabilidad limitada,

al amparo del Artículo 19.20 de la *Ley General de Corporaciones*, contra Series VI, requiriendo acceso a la información que permite el referido precepto. Esto para evaluar "el uso de los dineros invertidos por Humans en Aedifex y el desempeño del uso de dichos dineros en ShareNett Holdings, LLC." En la *Demanda* se detalló la información solicitada como sigue:[1]

> (1) Una descripción escrita fiel y exacta del estatus y condición financiera y de negocios de la Serie[s] VI, incluyendo, pero sin limitarse a una descripción de todos los contratos otorgados entre Serie[s] VI, su Miembro Gestor y cualquier afiliada(s) de una parte y de otra parte ShareNett Holdings LLC y cualquiera de sus afiliadas de otra parte.
> (2) Copias de todas las planillas de contribución sobre ingreso federales, estatales y locales para los años calendario 2020, 2021 y 2022 y si algunas de dichas planillas no estuviesen disponibles, copia de cualquier solicitud de prórrogas relacionadas a ellas.
> (3) Una lista actualizada del nombre y de la última dirección de negocio, residencial o postal conocida de todos los miembros y el gerente y/o administrador de la Serie[s] VI.
> (4) Copia actualizada del *Series Agreement, Master Agreement* y certificado de formación junto a cualquier enmienda, y toda copia firmada de todo poder mediante el cual el *Series Agreement* y cualquier certificado y enmienda que se haya otorgado.
> (5) Información fiel y exacta relacionada a la cantidad de efectivo y una descripción y declaración del valor acordado de cualquier otra propiedad o servicios contribuidos por cada miembro y que cada miembro haya acordado contribuir en el futuro y la fecha en que haya acordado en convertirse en miembro.

El 29 de enero siguiente, Series VI compareció mediante una Moción (i) Asumiendo Representación Legal; (ii) Informando Sumisión Voluntaria y (iii) en Solicitud de Prórroga para Cumplimiento de Orden de Mostrar Causa. En dicha moción indicó, además, que las partes estaban en conversaciones extrajudiciales conducentes a un acuerdo de transacción.

El 29 de febrero de 2024, Series VI presentó una moción intitulada *Moción informativa en torno a status de conversaciones transaccionales y en solicitud de breve término adicional*. En esta, expuso que las partes estaban "sosteniendo conversaciones

---

[1] Véase, Apéndice del Recurso, a las págs. 2-3. Notas al alce omitidas.

transaccionales activas, incluyendo la evaluación de la documentación necesaria y relevante ...” por lo que solicitó un término de cinco (5) días para informar el resultado final de las negociaciones.[2]

El 20 de marzo de 2024, Humans solicitó al foro primario que se emitiera un dictamen otorgando los remedios de la *Demanda*. Arguyó que, “[a] pesar de que las partes estaban próximas a consumar unas condiciones que pudieran disponer del caso, las condiciones no se han dado. En vista de que el término para cumplir con la Orden de mostrar causa de 16 de enero de 2024 expiró, y conforme a los apercibimientos del Tribunal, se solicita que se den por aceptados los hechos de la Demanda, se declare Ha Lugar la misma, [...].”[3] El 2 de abril siguiente, el TPI dictó la siguiente Orden: “Enterado. El 23 de abril de 2024 atenderemos este escrito.”[4] A su vez, ese mismo día, el representante legal de Series VI requirió el relevo de representación legal.

En igual fecha, notificada al día siguiente, el foro apelado emitió la siguiente Orden:[5]

> Tenga la parte demandada, Series VI Aedifex, el término final de 20 días a partir de hoy para anunciar el nombre de su nueva representación legal. Se advierte que transcurrido dicho término sin actuar se procederá a anotar la rebeldía y continuar los procedimientos sin su participación en el caso. El término vencerá el 22 de abril de 2024.
> Secretaría: Por las consecuencias que esta Orden tiene para la demandada, proceda a notificarle con copia de la Orden a la dirección provista en este escrito. En virtud de lo anterior, se declara ha Lugar la solicitud de renuncia de representación legal.

El 15 de abril de 2024, Humans inquirió al foro *a quo* que aclarara la orden emitida. Alegó que, ante el incumplimiento y las dilaciones ocasionadas por Series VI; así como la ausencia de una contestación a la demanda, era evidente que dicha parte no tenía

---

[2] *Íd.,* a las págs. 16-17.
[3] *Íd.,* a la pág. 19.
[4] Véase, Expediente Electrónico del caso SJ2024CV00187 del Sistema Unificado de Manejo y Administración de Casos (SUMAC), Entrada Núm. 19.
[5] Véase, Apéndice del Recurso, a la pág. 23.

interés en defenderse en este pleito. Por lo cual, a su entender, "…
la falta de una comparecencia oportuna … equivaldría a "su
aceptación de los hechos alegados en la demanda y al remedio
solicitado, […]."[6]

El 18 de abril de 2024, notificada ese mismo día, el TPI indicó:
"Nuestra orden fue clara en cuanto al término (22 abril 2024)
provisto para contratar representación legal. De no cumplir con
dicho término, procederemos a resolver el asunto. De no cumplir,
emitiremos directrices con término corto para actuar."[7]

El 19 de abril de 2024, compareció el apelante anunciando su
nueva representación legal. Asimismo, solicitó un término de veinte
(20) días para presentar su alegación responsiva y responder a la
Orden de mostrar causa emitida el 16 de enero de 2024.

El 22 de abril siguiente, notificada ese mismo día, el TPI dictó
una *Orden* en la cual dictaminó lo siguiente:[8]

> Se concede término final de 5 días a partir de hoy.
> Advertimos que transcurrido dicho término sin actuar
> se procederá a resolver sin su posición. El término
> vence al finalizar el día 26 de abril de 2024.

El 3 de mayo de 2024, Series VI presentó un escrito
informando estar consciente de los derechos que tiene Humans al
amparo del Artículo 19.20 de la *Ley General de Corporaciones*. Sin
embargo, solicitó al foro apelado, entre otros asuntos, que ordenara
a Humans a suscribir un acuerdo de confidencialidad previo a la
entrega de la información solicitada en los requerimientos número
1, 2, 4 y 5 de la *Demanda*. Recabó que, en dicho convenio se
garantizara que el uso de la información se limitaría a "evaluar el
uso de los dineros invertidos por Humans en Aedifex y el desempeño
del uso de dichos dineros en ShareNett Holdings, LLC." Respecto al

---

[6] *Íd.,* a la pág. 26.
[7] Véase, Expediente Electrónico del caso SJ2024CV00187 del SUMAC, Entrada
Núm. 22.
[8] Véase, Apéndice del Recurso, a la pág. 30.

requerimiento Núm. 3, peticionó que no se permitiera la divulgación de la lista de nombres y direcciones.

La parte apelada presentó su oposición. En apretada síntesis mencionó que, desde que comenzó el litigio, lo que ha hecho Series VI es optar por estratagemas para evitar producir lo que en derecho está obligada a producir. Adujo que, debido a la falta de diligencia de dicha parte el procedimiento sumario se ha retrasado por meses.

Así las cosas, el 9 de mayo de 2024, el TPI dictó una orden señalando el juicio en su fondo para el 16 de mayo de 2024, a las 9:30 am, mediante videoconferencia. Llamado el caso para la celebración del juicio, el tribunal informó haber conversado con las partes para auscultar la posibilidad de un acuerdo.[9] Las partes vertieron para récord sus respectivas posiciones. Luego de escuchadas, el TPI dictó la siguiente orden:[10]

- Concede a las partes término de tres (3) días a partir de hoy (20 de mayo de 2024 hasta las 5:00 de la tarde), para informar por escrito si llegaron a un acuerdo y si se entregarán la totalidad de los documentos solicitados en los cinco (5) incisos bajo un acuerdo de confidencialidad.
- De no llegar a un acuerdo, el Tribunal resolverá.
- Mantiene el caso fuera de calendario en espera del escrito de las partes.

Ante la falta de acuerdo entre las partes, se señaló una vista evidenciaria para el 17 de junio de 2024 por videoconferencia.

La prueba documental de Humans consistió en lo siguiente:[11]

Exhibit 1 de la parte demandante: *Subscription Agreement.*
Exhibit 2 de la parte demandante: *Operating Agreement.*
Exhibit 3 de la parte demandante: *Demand for Information-Letter.*
Exhibit 4 de la parte demandante: *Separate Series Agreement.*

Asimismo, el único testigo de Humans fue el Sr. Zachary Ryan Smith, para el cual fue necesario una intérprete debidamente

---

[9] *Íd.,* a las págs. 46-47.
[10] *Íd.,* a la pág. 47.
[11] La parte apelante no presentó objeción para que estos documentos fueran marcados como Exhibits. Véase, TPO a las págs. 160-161.

juramentada. A continuación, detallaremos un breve resumen de su testimonio.

El Sr. Zachary Ryan Smith (señor Smith) declaró ser miembro administrador de Humans y de otras cuatro series, y citamos:[12] "Yo fundé esta entidad junto con mi hermano para poder invertir en las etapas iniciales de compañías *startups* en la tecnología." *Íd.* En cuanto a la Series VI, indicó que sus miembros y accionistas eran él y varios miembros de su núcleo familiar.[13] Además, testificó que la Series VI es un socio de Humans.[14] Agregó que, "Básicamente, la Serie[s] VI es una serie, una LLC de serie, es un vehículo que se estableció específicamente para invertir en esta compañía, en Sharenet[t], que es una compañía Sharenet[t] Holdings de plataforma de tecnología y de valores. Y el resultado prorrata de eso se esperaba que entonces viniera a nuestra serie."[15] Además, durante su testimonio, este declaró que Humans invirtió en la Series VI de Sharenett $510,000.[16] En cuanto a la apelante expuso que, conforme a su mejor recuerdo, su miembro administrador era el Sr. Steven Santiago.[17]

Señaló no haber recibido el informe K-1 (se indica el por ciento de participación), tampoco la forma de rendimientos, ni ningún tipo de actualización por parte de la LLC o de las inversiones subyacentes.[18] Al respecto, mencionó que "… yo diría que más o menos hace un año yo traté de obtener más información de parte de la Serie[s] VI o de las inversiones subyacentes, [..]."[19] Asimismo,

---

[12] Véase, TPO a las págs. 163-164, y 182.
[13] *Íd.*, a la pág. 165.
[14] *Íd.*, a la pág. 168.
[15] *Íd.*, a la pág. 170.
[16] *Íd.*, a la pág. 169.
[17] *Íd.*, a la pág. 182.
[18] *Íd.*, a la pág. 184. La Series VI se creó para invertir en Sharenett Holdings. Por ende, "cuando hablo de la compañía subyacente, me refiero a Sharenet[t] Holdings." *Íd.*, a la pág. 191.
[19] *Íd.*, a la pág. 186.

declaró desconocer quiénes son los miembros de la apelante, ya que "nunca me han suministrado una lista de los miembros" del ente.[20]

Sobre el Exhibit I- *Subscription Agreement* el señor Smith estableció que la cláusula 2 (dd) dispone que como miembro está al "tanto y estoy consciente de que mi información se utilizará en los estados financieros y que mi información también la recibirán otras partes, incluidas: las cantidades, el por ciento de interés de la participación, mi nombre y mi dirección y esa información, según esté permitido por el acuerdo y por la ley."[21] Asimismo, el testigo especificó que el acápite intitulado *No Assurance of Confidentiality* dispone que "cuando un suscriptor se convierte en un miembro, debido a lo que se explicó en el párrafo DD, no existe una garantía de confidencialidad."[22]

Relativo al Exhibit 2- *Operating Agreement Aedifex Capital, LLC* este precisó que la Sección 3.1(a) menciona que el socio administrador (*Managing Member*) puede crear una serie adicional y en la Sección 4.2 dispone que si fueran a añadir otros miembros u socios serán incluidos en el Exhibit A con la lista de los nombres y estos tendrán que firmar este documento.[23]

De igual manera, explicó que, para aplicar lo dispuesto en la Sección 4.5 del acuerdo, es necesario contar con "los estados financieros anuales, el K-1, un entendimiento del *membership interest*, el documento firmado del acuerdo operacional, otras series, ese tipo de documento. Con eso, podríamos entonces determinar si hubo algún tipo de negligencia crasa, fraude, malversación de fondos, incumplimiento del deber fiduciario."[24]

---

[20] *Íd.*, a la pág. 190.
[21] *Íd.*, a la pág. 196. Véase, además, Apéndice del Recurso, a la pág. 61.
[22] *Íd.*, a la pág. 199. Véase, además, Apéndice del Recurso, a la pág. 76.
[23] *Íd.*, a la págs. 205-206. Véase, además, Apéndice del Recurso, a las págs. 82-84.
[24] *Íd.*, a la págs. 211-212. Véase, además, Apéndice del Recurso, a la pág. 85.

Por su parte, relativo al Exhibit 3- *Demand for Information-Letter,* este explicó que: el 5 de octubre de 2023 realizó una solicitud formal de toda la información según los términos del acuerdo operacional y las leyes de Puerto Rico.[25] Explicó que "Esto incluye: los nombres de las personas, los negocios, las enmiendas según los miembros de la Serie[s] VI, cualquier tipo de enmienda a esos acuerdos, la cantidad de efectivo, los estados financieros de los activos y las inversiones dentro de la Serie[s] [VI]."[26] Sin embargo, admitió que no se le proveyó "ninguna".[27]

Durante el contrainterrogatorio, este indicó que solicitó información contributiva de manera informal y admitió que se le ofreció producir la información solicitada a cambio de un non-disclosure.[28]

Sobre la cláusula del *Suscription Agreement* titulada *Limited Access to Information,* el testigo no reconoció que allí se le concede la facultad al *Managing Member* para limitar la información que entiende le podría causar perjuicio a la corporación.[29]

El señor Smith reiteró que el Sr. Steven Santiago representa a Aedifex Strategy, LLC y es su socio administrador.[30] También aseveró haber escrito en octubre del 2023 unos correos electrónicos a otros inversionistas del apelante con el interés de remover al Sr. Steven Santiago de su puesto.[31]

Así, aquilatada la prueba presentada, y dirimida la credibilidad del único testigo, el foro primario dictó el dictamen apelado, en el cual esbozó veintiséis (26) determinaciones de hechos. Asimismo, razonó que:[32]

---

[25] *Íd.,* a las págs. 226, 227-228. La solicitud se amparó en el Artículo 19.20 de la Ley General de Corporaciones, 14 LPRA sec. 3970. *Íd.,* a la pág. 99.
[26] *Íd.,* a la pág. 228.
[27] *Íd.,* a la pág. 229.
[28] *Íd.,* a las págs. 236-238.
[29] *Íd.,* a las págs. 243-246. Véase, además, Apéndice del Recurso, a la pág. 77.
[30] *Íd.,* a la pág. 260.
[31] *Íd.,* a las págs. 262-263.
[32] *Íd.,* a las págs. 121-122.

En el caso de autos, la Serie[s] VI de Aedifex no pudo establecer algún perjuicio que supere el interés de Humans de conocer qué ha pasado con la Serie[s] VI de Aedifex y el capital que invirtió en la misma. Véase *Rivest v. Hauppauge Digital, Inc.*, C.A. No. 2019-0848-PWG, slip. op., en la pág. 60 (Del. Ch. 1 de septiembre de 2022) (concediendo información corporativa sin restricción de confidencialidad alguna cuando la compañía no pudo hacer una demostración persuasiva de un daño mayor al interés del accionista). La Serie[s] VI de Aedifex tampoco presentó evidencia alguna sobre la existencia de algún deber de confidencialidad que no le permitiera divulgar la información solicitada, ni acreditó como, si en algo, la divulgación de la información solicitada podría perjudicar o atentar contra los mejores intereses y negocios de la Serie[s] VI de Aedifex. En contraste, Humans demostró que en el Acuerdo de Suscripción se advirtió a los inversionistas de la Serie[s] VI de Aedifex que la información que proveyeran como parte del proceso de suscripción, podría ser puesta a la disposición de otros inversionistas y hasta terceros.

En virtud de lo anterior, y que ninguno de los acuerdos limita el derecho de Humans a obtener la información solicitada, este Tribunal declara que Humans, como miembro de la Serie[s] VI de Aedifex, tiene derecho a recibir todos y cada uno de los documentos solicitados al amparo del Art. 19.20 de la Ley General de Corporaciones, sin la necesidad de suscribir acuerdo de confidencialidad alguno.

En cuanto a la temeridad, el foro *a quo* dictaminó que:[33]

El Tribunal encuentra que la conducta de la Demandada a lo largo del presente procedimiento ha sido manifiestamente temeraria y frívola. La Demandada **solicitó prórroga en cuatro ocasiones** distintas, a pesar de tratarse de un procedimiento sumario, lo cual evidencia una clara **intención de dilatar el proceso injustificadamente**. La temeridad de la Demandada quedó evidenciada al no presentar prueba alguna que respaldara la alegación de confidencialidad; y que, **a pesar de la ausencia de tal evidencia, continuó insistiendo en la necesidad de un acuerdo de confidencialidad sin fundamento alguno**. Es más, quedó demostrado que los inversionistas de la Demandada no tienen garantía de confidencialidad alguna frente a otros inversionistas respecto a la información que le provean a la Serie[s] VI de Aedifex como parte del proceso de suscripción, ya que se dispuso contractualmente que dicha información pudiera hacérsele disponible a los otros inversionistas. A esos efectos, el *Acuerdo Operacional* que aceptan inversionistas como Humans, provee un derecho contractual al Demandante a recibir los nombres y direcciones de cada miembro asociado con cualquiera de las series de Aedifex Capital LLC, incluyendo los miembros de la Serie[s] VI de Aedifex, pues establece que el miembro administrador de Aedifex Capital LLC tiene la obligación de anejar periódicamente al Acuerdo de Serie Separada una versión actualizada de los nombres y las direcciones de cada miembro asociado con cualquiera de las series de Aedifex. Así pues, más allá de que no se demostró que

---

[33] *Íd.*, a las págs. 122-123.

la información solicitada fuera confidencial, la Demandada tenía un deber contractual de proveer la lista de miembros y sus respectivas direcciones.

**Todos los retrasos ocasionados por la Demandada fueron completamente injustificados**, ya que mientras negó y retrasó el acceso a la información a base de una teoría de confidencialidad, no sustentó tal teoría debido a que no presentó prueba documental ni testimonial alguna que la respaldara. A esos efectos, no aportó prueba alguna que estableciera una creencia de buena fe respecto a que la información solicitada por Humans era confidencial, ni que su divulgación atentaría contra los mejores intereses de la Serie[s] VI de Aedifex. La Demandada tampoco presentó una alegación responsiva que incluyera defensas afirmativas que justificaran su conducta.

**Los retrasos, gastos y contratiempos resultantes de este pleito eran totalmente previsibles y evitables si la Demandada** hubiera cumplido con sus obligaciones bajo la Ley General de Corporaciones y los contratos suscritos entre las partes. Por lo tanto, conforme a lo dispuesto en la Regla 44(d) de Procedimiento Civil, el Tribunal impone a la Demandada el pago de honorarios de abogado, por su conducta temeraria y frívola durante todo el proceso judicial en el caso de epígrafe y por la negativa injustificada de la Demandada a proveer la información solicitada por uno de sus miembros conforme a la ley.

En fin, el foro primario dictó la Sentencia declarando *ha lugar* a la demanda instada por Humans. En consecuencia, ordenó a Series VI proveer todos los documentos solicitados, e impuso $20,000 en honorarios de abogado por temeridad.

En desacuerdo con el dictamen, el apelante acude ante este foro apelativo mediante el recurso de apelación de epígrafe imputándole al TPI haber incurrido los siguientes errores:

ERRÓ EL TPI AL ORDENAR LA PRODUCCIÓN IRRESTRICTA DE TODA LA INFORMACIÓN SOLICITADA EN LA DEMANDA SIN NINGUNA GARANTÍA PARA PROTEGER LA CONFIDENCIALIDAD DE LA INFORMACIÓN A SER PROVISTA, TODA VEZ QUE LA SOLICITUD DE ACCESO IRRESTRICTO A TODA LA INFORMACIÓN NO CUMPLE CON EL CRITERIO DE RAZONABILIDAD ESBOZADO EN EL ARTÍCULO 19.20 DE LEY DE CORPORACIONES.

ERRÓ EL TPI AL CONDENAR A LA DEMANDADA AL PAGO DE $20,000 EN HONORARIOS DE ABOGADO POR TEMERIDAD YA QUE EL TRACTO PROCESAL Y FÁCTICO EL CASO DEMUESTRA QUE LA PARTE DEMANDADA NO ACTUÓ TEMERARIAMENTE, TODA VEZ QUE EN NINGÚN MOMENTO SE NEGÓ A PRODUCIR LA INFORMACIÓN Y REALIZÓ ARGUMENTOS FUNDAMENTADOS EN LA PRUEBA DESFILADA Y LA LEY DE CORPORACIONES.

El 22 de agosto de 2024, dictamos una *Resolución* concediendo a la parte apelada el término de treinta (30) días para expresarse. Posteriormente, y examinado el Apéndice del Recurso apelativo, nos percatamos que fue acompañada la Transcripción de la Prueba Oral (TPO) de la vista celebrada el 17 de junio de 2024. En consecuencia, dictamos una *Resolución* el 4 de septiembre de 2024 concediendo a la parte apelada el término de diez (10) días para presentar sus objeciones a la transcripción. El 12 de septiembre siguiente, dimos por estipulada la TPO y le concedimos a la parte demandante término para presentar un alegato suplementario, de así entenderlo, y también otorgamos término a la parte apelada para presentar su alegato en oposición.

El 2 de octubre de 2024, la parte apelada presentó un *Alegato en Oposición a Recurso de Apelación.* Así, nos damos por cumplidos y a su vez, decretamos perfeccionado el recurso ante nuestra consideración.

Analizadas las comparecencias de las partes, el expediente apelativo (incluye la TPO) y los autos originales; así como estudiado el derecho aplicable, procedemos a resolver.

**II.**

***Acceso a información corporativa***

El Artículo 19.20 de la Ley núm. 164-2009, conocida como la Ley General de Corporaciones, 14 LPRA sec. 3970, dispone que:

> A. Cada miembro de una CRL [Compañía de responsabilidad limitada] tiene derecho, sujeto a normas de razonabilidad (incluyendo prácticas que regulen qué información y documentos serán provistos en qué momento y lugar y a costa de quién), que puedan ser dispuestas en un CCRL o de otra forma establecidas por el administrador o si no hay un administrador, entonces por los miembros, a recibir de la CRL, de tiempo en tiempo, ante solicitud razonable, para cualquier propósito razonablemente relacionado a los intereses del miembro como miembro en la CRL:
>
> > (1) Información completa y correcta relacionada al estado de los negocios y condición financiera de la CRL;

(2) Oportunamente después de estar disponible, una copia de las planillas de contribución sobre ingresos federales, estatales y locales para cada año;

(3) Una lista actualizada del nombre y última dirección conocida del negocio, residencial y postal de cada uno de los miembros y administradores;

(4) Una copia de cualquier CCRL escrito y certificado de organización y de cualesquiera enmiendas a los mismos, junto con copias otorgadas de cualquier poder escrito, conforme al cual el CCRL y cualquier certificado y cualesquiera enmiendas a éstos hayan sido otorgadas;

(5) Información completa y correcta relacionada con la cantidad de efectivo y una descripción y declaración del valor acordado de cualquier propiedad o servicios aportados por cada miembro y que cada miembro ha acordado aportar en el futuro, y la fecha en que cada cual se ha convertido en miembro; y

(6) Otra información relacionada con los asuntos de la CRL que sea justa y razonable.

B. **Cada administrador tendrá derecho a examinar toda la información** descrita en el inciso (a) de este Artículo para fines razonablemente relacionados con su posición de administrador.

C. El administrador de una CRL **tendrá derecho a mantener confidencial** de los miembros, por aquel periodo de tiempo que el administrador considere razonable, cualquier información que el administrador razonablemente entienda que es **información de negocios** u otra información cuya diseminación **el administrador cree de buena fe que no es en los mejores intereses** de la CRL o **podría perjudicar** la CRL **o sus negocios** o que la CRL **está requerida por ley o contrato con un tercero a mantener confidencial**.

D. ...

E. Cualquier solicitud de un miembro hecha bajo este Artículo **será por escrito** y dirá el propósito de dicha solicitud.

F. Cualquier causa de acción para ejercer algún derecho que se origine de este Artículo será presentada ante el Tribunal de Primera Instancia. Si la CRL se niega a permitir a un miembro obtener o a un administrador examinar la información descrita en el sub-inciso (3) del inciso (A) de este Artículo o no contestar a la solicitud dentro de los cinco (5) días de que la misma es presentada, el miembro solicitante o administrador **podrá solicitar al Tribunal de Primera Instancia que emita una orden obligando la entrega de dicha documentación**. Se le concede al Tribunal de Primera Instancia jurisdicción exclusiva para determinar si la persona solicitando dicha información tiene o no derecho a la información solicitada. **El Tribunal podrá ordenar sumariamente** a la CRL que permita al miembro solicitante obtener o al administrador examinar la información descrita en el sub-inciso (3) del inciso (A) de este Artículo y a preparar copias o abstractos de los mismos, o **podrá el Tribunal, sumariamente**, ordenar a la CRL a proveer al miembro o administrador solicitante la información descrita en el sub-inciso (3) del inciso (A) de este Artículo bajo la

condición de que el miembro o administrador solicitante pague primero a la CRL el costo razonable de obtener y proveer la información, y **bajo aquellas otras condiciones que el Tribunal entienda apropiadas**. Cuando un miembro solicitante de o un administrador que desea examinar la información descrita en el sub-inciso (3) del inciso (A) de este Artículo, el miembro o administrador solicitante deberá establecer:

(1) **que el miembro o administrador solicitante ha cumplido con las disposiciones de este Artículo relacionadas con la forma y manera de hacer la solicitud** para obtener o examinar dicha información; y

(2) que la información que el miembro o administrador está solicitando **está razonablemente relacionada con la posición del miembro como miembro o la del administrador como administrador**, según sea el caso.

El Tribunal podrá en su discreción, disponer cualesquiera limitaciones o condiciones con relación a la obtención y examen de información o conceder cualquier otro remedio o remedio adicional que el Tribunal entienda justo y apropiado. ...

G. ... [Énfasis nuestro]

### *La temeridad*

La Regla 44.1 (d) de las Reglas de Procedimiento Civil, 32 LPRA Ap. V, R. 44.1 (d), establece que en un caso ante el Tribunal de Primera Instancia en que cualquier parte o su abogado haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al responsable el pago de una suma por concepto de honorarios de abogado que el tribunal entienda correspondan a tal conducta.

El Tribunal Supremo ha definido el concepto de temeridad como aquella conducta que promueve un pleito que se pudo obviar, lo prolonga innecesariamente, o que obliga a una parte a involucrarse en trámites evitables. Dicho de otro modo, se entiende que un litigante actúa con temeridad cuando por su terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte, innecesariamente, a asumir las molestias, gastos, trabajo e inconveniencias de un pleito. *Maderas Tratadas v. Sun Alliance, et al.,* 185 DPR 880, 925-926 (2012). Esta penalidad tiene como propósito disuadir la litigación frívola; así

como fomentar las transacciones, a través de sanciones que compensen a la parte victoriosa de los perjuicios económicos y las molestias ocasionadas por la temeridad desplegada por otra parte en el caso. *Íd.*, a la pág. 926.

La evaluación de si ha mediado o no temeridad, **recae sobre la sana discreción del tribunal sentenciador** y solo se intervendrá con ella en casos en que dicho foro haya abusado de tal facultad. Sin embargo, una vez fijada la existencia de temeridad, la imposición del pago de honorarios de abogado es mandatoria. *Íd.* La cuantía se mide en virtud de: (1) el grado de temeridad que ha existido; (2) la naturaleza del procedimiento; (3) los esfuerzos y la actividad profesional que haya tenido que desplegarse; y (4) la habilidad y reputación de los abogados. *Corpak, Art Printing v. Ramallo Brothers*, 125 DPR 724, 738-739 (1990).

**La apreciación de la prueba y el estándar de revisión apelativa**

Es norma trillada que, en ausencia de error, prejuicio o parcialidad, los tribunales apelativos no intervendrán con las determinaciones de hechos, con la apreciación de la prueba, ni con la adjudicación de credibilidad efectuadas por el Tribunal de Primera Instancia. *González Hernández v. González Hernández,* 181 DPR 746, 776 (2011); *Ramírez Ferrer v. Conagra Foods PR,* 175 DPR 799, 811 (2009). Esta norma de deferencia judicial descansa en que el juez ante quien declaran los testigos es quien tiene la oportunidad de verlos y observar su manera de declarar, apreciar sus gestos, titubeos, contradicciones y todo su comportamiento mientras declaran; factores que van formando gradualmente en su conciencia la convicción sobre la verdad de lo declarado. *Suárez Cáceres v. Com. Estatal Elecciones,* 176 DPR 31, 68 (2009).

**III.**

En el primer error, la apelante señala que el TPI actuó incorrectamente al ordenar la producción irrestricta de toda la

información solicitada en la demanda sin ninguna garantía para proteger su confidencialidad. Aduce que, el acceso irrestricto a toda la información no cumple con el criterio de razonabilidad esbozado en el Artículo 19.20, antes citado. A continuación, veamos si el error se cometió.

De entrada, resulta menester señalar que del Artículo 19.20 de la Ley General de Corporaciones, *supra,* surge claramente el derecho de Humans a solicitar los documentos descritos en su demanda. Esto, como miembro de la compañía de responsabilidad limitada. Además, el referido precepto permite la disposición sumaria de dicha controversia. Sin embargo, el foro apelado celebró la vista evidenciaria a los efectos de que la parte apelante tuviera la oportunidad de demostrar que los requerimientos números 1, 2, 4 y 5 de la *Demanda* requerían la suscripción de un acuerdo de confidencialidad, previo a su producción. Asimismo, debía probar que no procedía la divulgación del requerimiento Núm. 3.

Como señalamos, la única prueba testifical fue presentada por el apelado. De la TPO surge que Series VI es socio de Humans y que el señor Smith, como miembro administrador de esta última entidad, le solicitó formalmente en el 2023 la información requerida en la demanda en cuestión, sin resultado alguno. Además, durante su testimonio este declaró que Humans invirtió $510,000 en la Series VI para que esta, a su vez, hiciera lo propio en compañías de plataforma de tecnología y de valores. Por ende, quedó demostrado que Humans tiene derecho a recibir los documentos solicitados y que, previo a la demanda, los peticionó por escrito.

De otro lado, Series VI sostuvo, durante el trámite del presente caso, que para la divulgación de dicha información se requería la otorgación de un acuerdo de confidencialidad. En especial, señaló que el requerimiento número 3, es decir, la "lista actualizada del nombre y de la última dirección de negocio, residencial o postal

conocida de todos los miembros y el gerente y/o administrador de la Serie[s] VI", era confidencial. Sin embargo, no surge de la TPO ni de la prueba documental admitida en evidencia, que dicha lista fuese confidencial. Tampoco se demostró que su divulgación podría atentar contra los mejores intereses de la Series VI o perjudicar sus negocios. Incluso, el apelante no pudo ni tan siquiera probar que dicho requerimiento fuese irrazonable.

Más bien, precisa enfatizar que, como bien determinó el TPI, la Sección 3.1 (c) del *Operating Agreement* no exige que se firme un acuerdo de confidencialidad previo a divulgar la información (nombre y direcciones) de cada miembro asociado a cualquier serie. La que se incluirá en un documento anejado y se actualizará por el Socio Administrador. Tampoco podemos obviar que el acápite intitulado *No Assurance of Confidenciality* del mismo acuerdo, establece que los inversionistas no tienen expectativa de confidencialidad frente a otros. En este claramente se indica que, a tenor con el *Operating Agreement* y las leyes aplicables, la información de estos será divulgada a los demás y además, se advierte que los inversionistas deben tomar medidas para mitigar el impacto de dicha divulgación.

Por otra parte, no coincidimos con lo argumentado por el apelante, en el recurso ante nuestra consideración, respecto a que el foro apelado falló en considerar la cláusula titulada *Limited Access to Information* del *Subscription Agreement*. Según dictaminó el TPI, el Exhibit A- *Joinder Agreement* de este se incorpora por referencia el *Operating* Agreement, según previamente explicado. Tampoco, de la lectura de este inciso, podemos deducir que la facultad del Socio Administrador de limitar la divulgación de la información de la cartera de compañías sea absoluta. Más bien, expresamente se indica que los inversionistas tienen derecho a obtener aquella información especificada y estrictamente limitada, conforme con el

*Operating Agreement* y a su vez, se particulariza que se podrá negar a divulgar información que sea esencial para determinar el valor de los valores emitidos por la cartera de compañías. También reiteramos que, de la TPO, no surge que el apelante haya podido evidenciar que divulgar la información solicitada pudiese causar perjuicio a la entidad.

Apuntalamos, además, que el hecho de que el señor Smith haya admitido que, en octubre del 2023, escribió unos correos electrónicos a otros inversionistas de la Series VI para remover al Sr. Steven Santiago de su puesto, no es prueba de que el requerimiento número 3 es confidencial. De igual manera, advertimos que de la TPO ni de la prueba documental surge en qué forma dicha petición podría atentar contra los mejores intereses de la Series VI de Aedifex, o perjudicar sus negocios, como correctamente estableció el foro *a quo* en el dictamen apelado. Por el contrario, Humans tiene derecho a obtener dicha información conforme dispone el Artículo 19.20 (A)(3), *supra*, según explicamos.

En virtud de lo anterior, y dado que ninguno de los acuerdos limita el derecho de Humans a obtener la información solicitada, el foro apelado correctamente resolvió que Humans, como miembro de la Series VI de Aedifex, tiene derecho a recibir todos y cada uno de los documentos solicitados, al amparo del Artículo 19.20 de la Ley General de Corporaciones, *supra*, sin la necesidad de suscribir acuerdo de confidencialidad alguno. Ello, para conocer "qué ha pasado con la Serie[s] VI de Aedifex y el capital que invirtió en la misma" según razonó el foro *a quo*.

Por tanto, el primer error no se cometió.

De otra parte, en el segundo error, el apelante aduce que erró el foro primario al determinar que fue temeraria y al imponerle $20,000 en honorarios de abogado. Como señalamos, en nuestro ordenamiento la evaluación de si ha mediado o no temeridad, **recae**

**sobre la sana discreción del tribunal sentenciador**, y solo se intervendrá con ella en casos en que dicho foro haya abusado de tal facultad. De un análisis del trámite procesal del presente caso, y de un examen de los argumentos esbozados por la Series VI, no surge que el foro apelado haya incurrido en un abuso de discreción al concluir que dicha parte fue temeraria. De hecho, en el dictamen apelado fueron consignados de manera clara los criterios para dicha determinación.

Por otro lado, el apelante señala que la cuantía es una excesiva. En numerosas ocasiones nuestro alto foro ha expresado que el factor determinante y crítico para fijar una suma razonable en honorarios de abogado es el grado o intensidad de la conducta frívola o temeraria.[34]

En el presente caso el litigio fue breve, solo transcurrieron cinco (5) meses desde que se presentó la demanda hasta su final solución, y dada la naturaleza del litigio, consideramos que la suma impuesta es excesiva. Del trámite procesal surge que el apelante: se sometió voluntariamente ante el tribunal; mantuvo conversaciones transaccionales; propuso remedios para resolver la controversia; presentó argumentos fundamentados en los acuerdos formalizados entre las partes; y no abandonó la causa de acción en su contra.

En consecuencia, entendemos que procede reducir la cuantía a $10,000 por colegir que resulta ser una razonable ante el tiempo invertido, el esfuerzo y la actividad profesional desplegada por los representantes legales.

En resumen, procede modificar la cuantía impuesta en honorarios de abogado por temeridad y así modificada, se confirma el dictamen apelado.

---

[34] Véase, *Blás Toledo v. Hosp. Guadalupe,* 146 DPR 267, 336 (1998); *Corpak, Art. Printing v. Ramallo Brothers*, 125 DPR 724, 738 (1990).

**IV.**

Por los fundamentos antes expuestos, modificamos la *Sentencia* apelada a los únicos fines de reducir a $10,000 los honorarios impuestos por temeridad. Así modificada, confirmamos.

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones